WILLIAM H. TAYLOE, APPELLANT, *v.* THE MERCHANTS' FIRE INSURANCE COMPANY OF BALTIMORE.

Where there was a correspondence relating to the insurance of a house against fire, the insurance company making known the terms upon which they were willing to insure, the contract was complete when the insured placed a letter in the post-office accepting the terms.

The house having been burned down whilst the letter of acceptance was in progress by the mail the company were held responsible.

On the acceptance of the terms proposed, transmitted by due course of mail to the company, the minds of both parties have met on the subject, in the mode contemplated at the time of entering upon the negotiation, and the contract becomes complete.

The practice of this company was to date a policy from the time when the acceptance was made known to their agent.

The agent of the company having instructed the applicant to "send him his check for the premium, and the business was done," the transmission of the check by mail was a sufficient payment of the premium within the terms of the policy.

One of the conditions annexed to the policy was, that preliminary proofs of the loss should be furnished to the company within a reasonable time. The fire occurred on the 22d of December, 1844, and the preliminary proofs were furnished on the 24th of November, 1845. This would have been too late, but that the company must be considered to have waived their being furnished, by refusing to issue a policy, and denying their responsibility altogether.

The cases in 2 Peters, 25, and 10 Peters, 507, examined.

A court of equity, having obtained jurisdiction to enforce a specific performance of the contract by compelling the company to issue a policy, can proceed to give such final relief as the circumstances of the case demand.

A prayer for general relief in this case covers and includes a prayer for specific performance.

Tayloe v. Merchants' Fire Ins. Co.

This was an appeal from the Circuit Court of the United States for the District of Maryland.

A decree *pro forma* was entered, under the agreement of the parties, dismissing a bill filed by Tayloe against the insurance company under the following circumstances.

The office of the insurance company was at Baltimore, but there was an agent at Fredericksburg, Virginia, who was John Minor.

On the 25th of November, 1844, this agent addressed to the company the following letter.

"*Fredericksburg, Virginia, November 25, 1844.*"

" Merchants' Fire Insurance Co. of Baltimore : —

" The undersigned, William H. Tayloe, desires to effect insurance to the amount of eight thousand dollars on his dwelling-house, of stone covered with wood; main building about ninety by sixty feet, two stories; two wings, two stories, covered with wood, about fifty by fifty feet, and connected with the main building by covered ways of stone, covered with wood. The above-mentioned house is known by the name of Mt. Airy, and is situated in Richmond County, about two miles and a half from the court-house.

" J. Minor,
for William H. Tayloe.

"P. S. Mr. Tayloe (not Mr. Taylor) passed through this place this morning on his way to Alabama, and, not having time to attend to his application, desired me to forward one in his name. The measures given are as nearly correct as I can remember; but, as the building is worth double the amount proposed, the measures are not of much importance. I have long been familiarly acquainted with the house. One thing I should state, that it is built of red sandstone, which in my opinion will not stand fire. Mr. Tayloe's family inhabits the house, and he will return in January or February; meanwhile, I am to communicate to him your answer.

" J. Minor."

On the 30th of November, 1844, the following answer was received.

" M. F. I. Co., *Baltimore, November* 30, 1844.

" J. Minor, Esq. : —

" Dear Sir, — Yours of 25th and account of 28th are received. I have forwarded Mr. B.'s policy. Mr. Tayloe's risk

will be taken at the same rate as Mr. Bernard's, viz. 70 cts. on $8,000, p. $56. Policy, $1.

"Yours, respectfully,

"Geo. B. Coale, Secretary."

When this letter was received by Minor, Tayloe was in Alabama, and Minor addressed to him the following letter, which he directed to Demopolis, Alabama, and which was sent from Demopolis to Macon, where Tayloe then was.

"Fredericksburg, December 2, 1844.

"This day I received from the secretary of the board of the Merchants' Fire Insurance Company of Baltimore an answer to your application for insurance to the amount of $8,000 on the Mount Airy house; rate 70.

| | | | | | | |
|---|---|---|---|---|---|---|
| Premium on $8,000 | . | . | . | | $56.00 |
| Policy | . | . | . | . | . | 1.00 |
| | | | | | | $57.00 |

"Should you desire to effect the above insurance, send me your check, payable to my order, for $57, and the business is concluded."

This letter, having been misdirected by Minor, did not reach the appellant until the 20th of December, 1844, and on the next day he wrote Minor the following letter.

"Macon, Marengo County, Ala., 21st Dec., 1844.

"Dear Minor, — Yours of the 2d came to hand yesterday, and I send you my check for fifty-seven dollars, as the premium of insurance on Mount Airy house. You will please deposit the policy in the Bank of Virginia, in your town, &c. &c.".

Mem. indorsed, "Mem. rec'd December 31st, 1844."

(Check Inclosed.)

"Marengo County, Ala., 21st Dec., 1844.

"$57. Bank of Virginia, Fred'g, pay John Minor, Esq., or order, fifty-seven dollars, premium of insurance on Mt. Airy house.

"Wm. H. Tayloe."

Written across the face, — "This check not to be presented."

On the 22d of December, 1844, the house was burned down.

On the 1st of January, 1845, Minor addressed a letter to Tayloe, from which the following is an extract.

"*Fredericksburg, Jan. 1st,* 1845.

"My dear friend, — Your letter of the 21st ultimo came to hand yesterday, unhappily too late. You have before this time, perhaps, received information that the centre building of Mount Airy was burnt on Sunday week (Dec. 22d)," &c., &c.

Mr. Minor was informed of the loss by Mr. Charles Tayloe, on the day after it took place.

In the summer of 1845, Tayloe called at the office of the company, and had some conversation respecting the insurance and the burning of his house, and in November, 1845, furnished them with the preliminary proofs of the loss which are always required to be handed in as soon as possible after the loss, by the conditions annexed to the printed policies of the company.

To the letter accompanying the preliminary proof, the company returned the following answer.

"*Merchants' Fire Insurance Co., Baltimore,*
*Dec. 15th,* 1845.

"W. H. Tayloe, Esq. : —

"Dear Sir, — The Merchants' Fire Insurance Company has received your letter of 24th November, 1845, containing notice of claim for loss by fire on 22d December, 1844, and I am instructed to reply that the company declines to pay the claim as thereby made by you, and that, under the circumstances of the case, it does not waive any grounds of defence whatever, but will avail itself of all and any that by law it may.

"Very respectfully, your obedient servant,
(Signed,). Geo. B. Coale, *Sec'y.*"

During the progress of the suit, the following admission was filed in the Circuit Court by the respective counsel.

"*Admission.*

"It is admitted that the printed advertisement (marked complainant's No. 1) of John Minor, dated on the 27th July, 1842, giving notice of his agency, was published by him in a newspaper published in Fredericksburg, Virginia. It is also admitted, that the letter of said Minor to Wm. H. Tayloe, the complainant, dated December 2d, 1844 (marked complainant's No. 2), was written by said Minor, and addressed to said Tayloe, at Demopolis, Alabama, and afterwards sent from Demop-

olis to Macon, Alabama, at the dates of the two postmarks
thereon, where said Tayloe then was; and that the letter from
said Minor to said Tayloe, dated 1st January, 1844 (1845),
(marked complainant's No. 3,) was written by said Minor. It
is agreed that the charter of the said defendants (Act of Mary-
land, 1835, ch. 65, and supplements) may be used by either
party, and read from the printed laws, as if proved; and also
it is admitted that the printed blank policy, filed with the de-
fendants' answer as an exhibit, is the form uniformly used by
said defendants from its incorporation till this time, and that the
exhibits G, H, and I, with the defendants' answer, are admit-
ted; and all of said above papers may be used, at the trial of
the above cause, as if the same had been regularly proved by
the respective parties.

> "JOHN GLENN, *for Complainant.*
> JOHN J. LLOYD, *for Defendants.*"

In April, 1846, Tayloe filed his bill in the Circuit Court. It
stated the substance of the facts above mentioned, and con-
cluded thus: —

"To the end, therefore, that he may have redress on the
premises, and that by a decree of this court the said defendants
may be ordered and adjudged to pay to your orator the amount
of actual loss which he has sustained, to an amount not ex-
ceeding eight thousand dollars, and that he may have such fur-
ther relief as his case may require: may it please your honors
to order that a writ of subpœna may issue, directed to said Mer-
chants' Fire Insurance Company of Baltimore, to be and appear
in this court to answer this bill, and to stand to and abide by
the decree in the premises; and he will ever pray, &c.

> "R. JOHNSON,
> J. GLENN."

The answer of the appellees admits, that John Minor was the
agent of the appellees, at Fredericksburg, Virginia, "to receive
and forward to appellees proposals for insurance against fire";
that said agent did, on 25th of November, 1844, in behalf of
the appellant, send a proposal for insurance, which was an-
swered on the 30th of November, 1844; but that no reply was
received from appellant till the 31st of December, 1844, by a
letter inclosing appellant's check for the amount of the pre-
mium. That immediately on the receipt of said reply, the ap-
pellant was informed that it came too late; that the dwelling
proposed to be insured had been burnt on the 22d of December,
1844, and that the check had not been and would not be pre-

sented for payment, and that said check was cancelled.   The answer further exhibits a copy of the printed form of the policy uniformly used by the appellees in 1844, and before and since that time, and avers that it contains the terms and conditions on which the appellees insured, and that all answers of the appellees to applications for insurance against fire have always been with reference to the terms of said policy, and the printed conditions thereto annexed; and it further avers, that the reply of the appellees to the application on behalf of the appellant, in this instance, was made with reference to said terms and printed conditions, and that except on those terms and conditions the appellees would not and did not offer to insure the appellant. The answer further denies that any contract of insurance was at any time made by appellees with the appellant, or that any premium of insurance was paid by appellant or received by appellees, or that the appellant had a right to demand a policy of insurance, or payment for loss by fire.   It also denies that the appellant, before filing his bill, required appellees to furnish him with a policy of insurance, or that any demand of payment for the loss by fire was made, except as therein specified, in the summer of 1845, and after that time, as particularly set forth in the answer.   The answer further insists, that, if it should be held that the transactions relating to said application did amount to a contract of insurance, yet it was a contract on the terms and conditions specified in the policy, and that the appellant never complied therewith, and particularly never complied with the seventh printed condition which is set forth in the answer, and therefore he is not entitled to demand payment.

The blank policy (which, it is admitted, — see *Admission, supra,* — "is the form uniformly used by the appellees from their incorporation till this time") provides, "that the amount of such loss or damage as the assured shall be entitled to receive by virtue of this policy shall be paid within sixty days after notice and proof thereof made by the assured in conformity to the conditions of this corporation subjoined to this policy."

It also provides, that the "insurance is made and accepted in reference to the conditions which accompany these presents; and in every case the said conditions are to be used to explain the rights and obligations of the parties, except so far forth as the policy itself specially declares those rights and obligations."

The fifth condition is, — "No insurance will be considered as made, or binding, until the premium be actually paid."

The seventh condition provides, that "all persons insured by this company, sustaining any loss or damage by fire, are

forthwith to give notice to the company, and as soon thereafter as possible to deliver in as particular an account of their loss or damage, signed by their own hands, as the nature of the case will admit, and make proof of the same by their oath or affirmation," &c., &c. "And, until such affidavits and certificates are produced, the loss shall not be payable."

The appellant examined several witnesses under a commission issued to Fredericksburg, Va. John Minor, the agent, proves that the appellant authorized and requested him to apply to the appellees to effect the insurance, and that in consequence thereof the application was written by him. That on the 31st of December, 1844, he received a letter from appellant inclosing his check for $ 57, which the appellant directed to be applied to the payment of the insurance on the property, but that the check was never presented for payment, because the property on which the insurance was to have been effected was destroyed on the 22d of December, 1844. That soon after the receipt of said letter and check, the deponent wrote to appellant that his check had been received, but too late. And on his cross-examination he proves that he held said check subject to appellant's order, and wrote across its face, "This check is not to be presented," of all which he duly advised the appellant by letter written, as he thinks, immediately after the receipt of the check, and that when the appellant returned to Virginia, deponent told him he was ready to return the check, and tendered it to him, &c. ; that he kept it, by appellant's direction, but always subject to appellant's authority. He also proves, in answer to the sixth cross-interrogatory, that, if there had been no fire before the receipt of the check, and a policy had been issued, the insurance, according to the custom and practice of his agency, would have begun, in ordinary cases, on the day on which payment of the check was made ; but that in this particular case, as deponent was willing to cash the appellant's check, it would have begun on the day the check came to hand.

In November, 1847, the cause came on for trial, when the Circuit Court passed a decree, (which it has already been stated was *pro forma* under the agreement of the parties,) that the bill should be dismissed, with costs.

The complainant, Tayloe, appealed to this court.

It was argued by *Mr. Johnson* (Attorney-General), for the appellant, and by *Mr. Lloyd* and *Mr. Nelson*, for the appellees.

For the appellant it was contended, ——.

1st. That on the 21st of December, 1844, a contract for the

insurance of the appellant's house of Mount Airy was entered into between him and the appellees, through their agent, and the premium paid by the appellant as agreed on, and that he was entitled to a policy of insurance accordingly, taking effect from that day. Story on Contracts, §§ 378, 384, and the cases cited in the notes; 1 Duer on Insurance, 67, 68, and the cases cited in notes 8 and 9, pages 114 to 130; Hamilton v. Lycoming Insurance Co., 5 Barr, 339; Story on Agency, §§ 17, 18, 19, 126, 127; Lightbody v. The North American Insurance Co., 23 Wendell, 22; Armistead v. The Merchants' Fire Insurance Co. of Baltimore, Circuit Court U. S. Md., unreported.

2d. That the loss to the extent of the whole amount insured occurred after the policy took effect, and that the loss is recoverable in the present suit: 1 Duer on Insurance, 66; Perkins v. The Washington Insurance Co., 4 Cowen, 646; Carpenter v. The Mutual Safety Insurance Co., 4 Sandford, 410.

3d. That the delay in furnishing the preliminary proofs was occasioned by the appellees, who cannot in consequence take advantage of it, and that the appellees have virtually waived their production. Columbia Insurance Co. v. Lawrence, 10 Peters, 514; Cornell v. Leroy, 9 Wendell, 165; Turley v. The North American Fire Insurance Co., 25 Wendell, 378; McMasters v. The Westchester Mutual Insurance Co., 25 Wendell, 382; Allegre v. The Maryland Insurance Co., 6 Harr. & Johns. 412; Armistead v. The Merchants' Fire Insurance Co. of Baltimore, *supra*.

The counsel for the appellees contended, —

1st. That the appellant has not shown by the evidence any contract of insurance on the part of the appellees in respect of the property destroyed.

2d. That, assuming such contract to have been shown, the appellant has not complied with its terms and stipulations so as to entitle him to recover from the appellees. The Columbia Insurance Co. v. Lawrence, 2 Pet. 25; Columbia Insurance Co. v. Lawrence, 10 Peters, 507; Carpenter v. The Prov. Wash. Insurance Co., 16 Peters, 496; Carpenter v. The Prov. Wash. Ins. Co., 4 How. 185; Leadbetter v. Insurance Co., 13 Maine, 265; Worsley v. Wood and others, 6 Durnf. & East, 710; Oldman v. Bewicke, 2 H. Black. 577, note a; Inman v. The Western Fire Insurance Co., 12 Wendell, 452; Edwards v. The Baltimore Fire Insurance Co., 3 Gill, 177.

3d. That even if the appellant has shown the existence of the alleged contract, and his compliance with its terms, he has misconceived his remedy, a court of law being competent to

afford him adequate redress. Act of Congress approved 24th September, 1789, § 16.

4th. That, if relievable in equity, the bill contains no sufficient statement of the contract sought to be enforced, or of the performance of the terms thereof by the appellant. 2 Story's Equity, §§ 736, 771; Colson *v.* Thompson, 2 Wheaton, 336; Cross *v.* Cohen, 3 Gill, 257; Carpenter *v.* Prov. Wash. Ins. Co., 16 Peters, 496; Same *v.* Same, 4 Howard, 185.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court for the District of Maryland, which was rendered for the defendants.

The case in the court below was this. William H. Tayloe, of Richmond County, Virginia, applied to John Minor, the agent of the defendants, residing at Fredericksburg in that State, for an insurance upon his dwelling-house to the amount of $ 8,000 for one year, and, as he was about leaving home for the State of Alabama, desired the agent to make the application in his behalf.

The application was made accordingly, under the date of 25th November, 1844, and an answer received from the secretary of the company, stating that the risk would be taken at seventy cents on the thousand dollars, the premium amounting to the sum of fifty-six dollars. The agent stated in the application to the company the reason why it had not been signed by Tayloe; that he had gone to the State of Alabama on business, and would not return till February following; and that he was desired to communicate to him at that place the answer of the company.

On receiving the answer, the agent mailed a letter directed to Tayloe, under date of the 2d of December, advising him of the terms of the insurance, and adding, " Should you desire to effect the insurance, send me your check payable to my order for $ 57, and the business is concluded." The additional dollar was added for the policy.

This letter, in consequence of a misdirection, did not reach Tayloe till the 20th of the month; who, on the next day, mailed a letter in answer to the agent, expressing his assent to the terms, and inclosing his check for the premium as requested. He also desired that the policy should be deposited in the bank for safe-keeping. This letter of acceptance was received on the 31st at Fredericksburg by the agent, who mailed a letter in answer the next day, communicating to Tayloe his refusal to carry into effect the insurance, on the ground that his acceptance came too late, the centre building of the dwelling-

house in the mean time, on the 22d of the month, having been consumed by fire.

The company, on being advised of the facts, confirmed the view taken of the case by their agent; and refused to issue the policy, or pay the loss.

A bill was filed in the court below by the insured against the company, setting forth, substantially, the above facts, and praying that the defendants might be decreed to pay the loss, or for such other relief as the complainant might be entitled to.

I. Several objections have been taken to the right of the complainant to recover, which it will be necessary to notice; but the principal one is, that the contract of insurance was not complete at the time the loss happened, and therefore, that the risk proposed to be assumed had never attached.

Two positions have been taken by the counsel for the company for the purpose of establishing this ground of defence.

1. The want of notice to the agent of the company of the acceptance of the terms of the insurance; and,

2. The non-payment of the premium.

The first position assumes that, where the company have made an offer through the mail to insure upon certain terms, the agreement is not consummated by the mere acceptance of the offer by the party to whom it is addressed; that the contract is still open and incomplete until the notice of acceptance is received; and that the company are at liberty to withdraw the offer at any time before the arrival of the notice; and this even without communicating notice of the withdrawal to the applicant; — in other words, that the assent of the company, express or implied, after the acceptance of the terms proposed by the insured, is essential to a consummation of the contract.

The effect of this construction is, to leave the property of the insured uncovered until his acceptance of the offer has reached the company, and has received their assent; for, if the contract is incomplete until notice of the acceptance, till then the company may retract the offer, as neither party is bound until the negotiation has resulted in a complete bargain between the parties.

In our apprehension, this view of the transaction is not in accordance with the usages and practice of these companies in taking risks; nor with the understanding of merchants and other business men dealing with them; nor with the principles of law, settled in analogous cases, governing contracts entered into by correspondence between parties residing at a distance.

On the contrary, we are of opinion that an offer under the circumstances stated, prescribing the terms of insurance, is intended, and is to be deemed, a valid undertaking on the part of the company, that they will be bound, according to the terms tendered, if an answer is transmitted in due course of mail, accepting them ; and that it cannot be withdrawn, unless the withdrawal reaches the party to whom it is addressed before his letter of reply announcing the acceptance has been transmitted.

This view of the effect of the correspondence seems to us to be but carrying out the intent of the parties, as plainly manifested by their acts and declarations.

On the acceptance of the terms proposed, transmitted by due course of mail to the company, the minds of both parties have met on the subject, in the mode contemplated at the time of entering upon the negotiation, and the contract becomes complete. The party to whom the proposal is addressed has a right to regard it as intended as a continuing offer until it shall have reached him, and shall be in due time accepted or rejected.

Such is the plain import of the offer. And besides, upon any other view, the proposal amounts to nothing, as the acceptance would be but the adoption of the terms tendered, to be, in turn, proposed by the applicant to the company for their approval or rejection. For, if the contract is still open until the company is advised of an acceptance, it follows, of course, that the acceptance may be repudiated at any time before the notice is received. Nothing is effectually accomplished by an act of acceptance.

It is apparent, therefore, that such an interpretation of the acts of the parties would defeat the object which both had in view in entering upon the correspondence.

The fallacy of the argument, in our judgment, consists in the assumption, that the contract cannot be consummated without a knowledge on the part of the company that the offer has been accepted. This is the point of the objection. But a little reflection will show, that, in all cases of contracts entered into between parties at a distance by correspondence, it is impossible that both should have a knowledge of it the moment it becomes complete. This can only exist where both parties are present.

The position may be illustrated by the case before us. If the contract became complete, as we think it did, on the acceptance of the offer by the applicant, on the 21st December, 1844, the company, of course, could have no knowledge of it until

the letter of acceptance reached the agent, on the 31st of the month; and, on the other hand, upon the hypothesis it was not complete until notice of the acceptance, and then became so, the applicant could have no knowledge of it at the time it took effect. In either aspect, and, indeed, in any aspect in which the case can be presented, one of the parties must be unadvised of the time when the contract takes effect, as its consummation must depend upon the act of one of them in the absence of the other.

The negotiation being carried on through the mail, the offer and acceptance cannot occur at the same moment of time; nor, for the same reason, can the meeting of the minds of the parties on the subject be known by each at the moment of concurrence; the acceptance must succeed the offer after the lapse of some interval of time; and, if the process is to be carried farther in order to complete the bargain, and notice of the acceptance must be received, the only effect is to reverse the position of the parties, changing the knowledge of the completion from the one party to the other.

It is obviously impossible, therefore, under the circumstances stated, ever to perfect a contract by correspondence, if a knowledge of both parties at the moment they become bound is an essential element in making out the obligation. And as it must take effect, if effect is given at all to an endeavour to enter into a contract by correspondence, in the absence of the knowledge of one of the parties at the time of its consummation, it seems to us more consistent with the acts and declarations of the parties, to consider it complete on the transmission of the acceptance of the offer in the way they themselves contemplated; instead of postponing its completion till notice of such acceptance has been received and assented to by the company.

For why make the offer, unless intended that an assent to its terms should bind them? And why require any further assent on their part, after an unconditional acceptance by the party to whom it is addressed?

We have said that this view is in accordance with the usages and practice of these companies, as well as with the general principles of law governing contracts entered into by absent parties.

In the instructions of this company to their agent at Fredericksburg, he is advised to transmit all applications for insurance to the office for consideration; and that, upon the receipt of an answer, if the applicant accepts the terms, the contract is considered complete without waiting to communicate the

34 *

acceptance to the·company; and the policy to be thereafter issued is to bear date from the time of the acceptance.

The company desire no further communication on the subject, after they have settled upon the terms of the risk, and sent them for the inspection of the applicant, in order to the consummation of the bargain. The communication of·the acceptance by the agent afterwards is to enable them to make out the policy. The contract is regarded as complete on the acceptance of the terms.

This appears, also, to have been the understanding of the agent; for, on communicating to the insured the terms received from the company, he observes, " Should you desire to effect the above insurance, send me your check payable to my order for fifty-seven dollars, and the business is concluded "; obviously enough importing, that no other step would be necessary to give effect to the insurance of the property upon the terms stated.

The cases of Adams v. Linsdell, 1 Barn. & Ald. 681, and Mactier's Adm'rs v. Frith, 6 Wend. 104, are authorities to show that the above view is in·conformity with the general principles of law governing the formation of all contracts entered into between parties residing at a distance by means of correspondence.

The unqualified acceptance by the one of the terms proposed by the other, transmitted by due course of mail, is regarded as closing the bargain, from the time of the transmission of the acceptance.

This is, also, the effect of the case of Eliason v. Henshaw, 4 Wheat. 228, in this court, though the point was not necessarily involved in the. decision of the case. The acceptance there had not been according to the terms of the bargain proposed, for which reason the plaintiff failed.

2. ·The next position against the claim is the non-payment ·of the premium.

One of the conditions annexed to the policies of the company is, that no insurance will be considered as made or binding until the premium be actually paid; and one of the instructions to the agent was, that no credit should be given for premiums under any circumstances.

But the answer to this objection is, that the premium, in judgment of law, was actually paid at the time the contract became complete. The mode of payment had not been prescribed by the company, whether in specie, bills of a particular bank, or otherwise; the agent, therefore, was at liberty to exercise·a discretion in the matter, and prescribe the mode of

payment; and, accordingly, we find him directing, in this case, that it may be paid by a check payable to his order for the amount. It is admitted that the insured had funds in the bank upon which it was drawn, at all times from the date of the check till it was received by the agent, sufficient to meet it; and that it would have been paid on presentment.

It is not doubted, that, if the check for the premium had been received by the agent from the hands of the insured, it would have been sufficient; and in the view we have taken of the case, the transmission of it by mail, according to the directions given, amounts, in judgment of law, to the same thing. Doubtless, if the check had been lost or destroyed in the transmission, the insured would have been bound to make it good; but the agent, in this respect, trusted to his responsibility, having full confidence in his ability and good faith in the transaction.

II. Another objection taken to the recovery is, that the usual preliminary proofs were not furnished, according to the requirement of the seventh article of the conditions annexed to the policies of the company. These are required to be furnished within a reasonable time after the happening of the loss. The fire occurred on the 22d of December, 1844, and the preliminary proofs were not furnished till the 24th of November, 1845. This was, doubtless, too late, and the objection would have been fatal to the right of the complainant, if the production of these proofs were essential to the recovery.

But the answer is, that the ground upon which the company originally placed their resistance to the payment of the loss, and which is still mainly relied on as fatal to the proceedings, operated as a waiver of the necessity for the production of the preliminary proofs; and that is, that no obligation to insure the loss was ever entered into by the company, the contract being incomplete at the time it occurred. On this ground they refused to issue the policy, which would have imposed upon the insured a strict compliance with its conditions; or to recognize any obligations arising out of the arrangement between him and their agent.

The objection went to the foundation of the claim, which, in connection with the refusal to issue the policy, superseded the necessity of producing these proofs; as the production would have been but an idle ceremony on the part of the insured, in the further prosecution of his right. Why produce them after the company had denied the contract, and refused the policy?

The case of the Columbian Insurance Company v. Lawrence,

2 Peters, 25, has been referred to on this point. An objection was there taken, on the trial, to the sufficiency of the preliminary proofs, on the ground that the certificate of the magistrate was not in conformity with the ninth article of the conditions. The particular objection had not been taken by the company when the proofs were furnished, although several others had been, to their liability; and the court left to the jury the question, among others, whether the company had not thereby waived the objection to the sufficiency of the certificate.

The plaintiff recovered; and on the motion for a new trial, among other grounds assigned for granting it, was this instruction of the court. It was held that there was no evidence in the case from which the jury could properly infer a waiver.

The preliminary proofs had been presented to the company on the 16th of February, 1824, soon after the loss. The suit was discontinued, and a new certificate procured from the magistrate correcting the defects in the first, and furnished to the company, on the 14th of February, 1829, five years after the first had been delivered. A new suit was brought, and the case as reported the second time will be found in 10 Peters, 507.

On the second trial, the objection was taken that the certificate had not been produced within a reasonable time after the loss; but the court held otherwise, placing their decision upon the ground, that the laches were not properly imputable to the insured, but to the company, on account of their neglect to give notice of the defect when the first certificate was presented, and of the mistaken confidence which the party had placed in them. The court say, "If the company had contemplated the objection, it would have been but ordinary fair-dealing to have apprised the plaintiff of it; for it was then obvious that the defect might have been immediately supplied; as it was, the company, unintentionally it may be, by their silence misled him."

It is manifest, on an examination of the two cases, that the doctrine of the first on this point of waiver was virtually overruled, for, if maintained in the second, it would have upheld the ruling at the Circuit in the first. The reasons given in support of the corrected certificate, procured and furnished some five years after the loss, are cogent and unanswerable in favor of the position, that the conduct of the company in not objecting to the defect in the first one, at the time it was furnished, operated to mislead the party, and should have been regarded as a waiver of the objection.

The cases are very full upon this point, and clearly establish the position that the preliminary proofs, under the circumstan-

ces, stated in this case, were dispensed with by the company, as inferrible from the ground upon which they placed their denial of liability. 9 Wend. 165; 25 ib. 378, 382; 6 Harr. & Johns. 412; 6 Cow. 404.

III. It has also been objected, that the plaintiff had an adequate remedy at law, and was not, therefore, under the necessity of resorting to a court of equity; which may very well be admitted.

But it by no means follows from this, that a court of chancery will not entertain jurisdiction. Had the suit been instituted before the loss occurred, the appropriate, if not the only, remedy would have been in that court, to enforce a specific performance, and compel the company to issue the policy. And this remedy is as appropriate after as before the loss, if not as essential, in order to facilitate the proceedings at law. No doubt, a count could have been framed upon the agreement to insure, so as to have maintained the action at law. But the proceedings would have been more complicated and embarrassing than upon the policy. The party, therefore, had a right to resort to a court of equity to compel the delivery of the policy, either before or after the happening of the loss; and being properly in that court after the loss happened, it is according to the established course of proceeding, in order to avoid delay and expense to the parties, to proceed and give such final relief as the circumstances of the case demand.

Such relief was given in the case of Motteux v. The London Assurance Company, 1 Atk. 545, and in Perkins v. The Washington Insurance Company, 4 Cow. 646. See also 1 Duer, 66 and 110, and 2 Phillips, 583.

As the only real question in the case is the one which a court of equity must necessarily have to decide, in the exercise of its peculiar jurisdiction in enforcing a specific execution of the agreement, it would be an idle technicality for that court to turn the party over to his remedy at law upon the policy. And, no doubt, it was a strong sense of this injustice that led the court at an early day to establish the rule, that, having properly acquired jurisdiction over the subject for a necessary purpose, it was the duty of the court to proceed and do final and complete justice between the parties, where it could as well be done in that court as in proceedings at law.

IV. It is further objected, that, admitting the claim to be properly enforceable in equity, still the complainant is not entitled to the relief sought, on the ground that the bill contains no sufficient statement of the contract, or of the performance of the conditions; and also for want of a proper prayer.

Tayloe *v.* Merchants' Fire Ins. Co.

We are of opinion that these several objections are not well founded. The contract as set forth we have already considered, and held complete and binding on the company; and further, that the denial of having entered into the agreement, and refusal to issue the policy, also set forth, are sufficient ground upon which to infer a waiver of the production of the preliminary proofs, as a condition of liability; and if sufficient ground to infer a waiver, it was of course unnecessary to set forth these proofs in the bill. And as to the prayer, it is sufficient to say, that the prayer for general relief which is here found will enable the court to make such a decree as the complainant may show himself entitled to, upon the facts set forth in the stating part of the bill.

The pleading is not very formal, nor very cautiously drawn, and, in the absence of the prayer for general relief, might have led to embarrassment in making the proper decree in the case. There is a specific prayer for a decree for the loss, but it would have been more formal and appropriate, regarding the ground of jurisdiction in these cases, to have added also a prayer for a specific performance of the agreement to insure.

But the particular relief permitted under a general prayer, where the statement in the body of the bill is sufficient to entitle the party to it, meets the difficulty suggested, and well warrants the decree proposed to be entered. (Story, Eq. Pl., §§ 41, 42, and cases.)

Upon the whole, without pursuing the examination further, we are of opinion that the decree of the court below should be reversed, and that the cause be remitted, with directions to the court to take such further proceedings therein as may be necessary to carry into effect the opinion of this court.*

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to that court to take such proceedings therein as may be necessary to carry into effect the opinion of this court.

---

* See the Appendix.