Caldwell, J.
This is a bill filed for the purpose of charging the defendant, as insurer, for a loss occasioned by fire, sustained by Frederick Bollmeyer.
*The facts of the case, as appear from the pleadings and evidence, are these: The Medina County Mutual Insurance Company had an agency at Warren, in Trumbull county, the place of residence of said Frederick Bollmeyer. On the 27th of May, 1846, Bollmeyer applied to McConnell, the agent of the company, for an insurance on his stock of goods and groceries in Warren. The amount of insurance fixed upon the stock was $600. Bollmeyer made his deposit or premium note, for $78, with security to the company, paid $1.67, the per cent, required to be paid down, which Avas passed by the agent to the credit of the company, and at the same time paid for a policy. The application of Bollmeyer, together Avith the premium note, was mailed on May 27 or 28 (not *455 certain, from the evidence, which of these days), to the office of the company, at Medina. The application and note reached Medina on the 2d of June, and were taken out of the office by the agent of the company, at that place, on the same clay. The property was destroyed by fire on the night of the first of June. Information of the destruction of the property reached Medina about the same time that the application and note were received by the agent at Medina, and was about the same time communicated to him. Bollmoyermade out an authenticated statement of his loss, and through their agent, presented it to the company. The company refused to issue the policy or pay the loss. McConnell, the agent at Warren, within a few days after the loss, tendered to Bollmeyer the amount he had paid, which he refused to receive. The bill prays that the company be decreed to issue a policy, and for general relief. It is contended, in the first place, on the part of defendant, that the agent had no authority to bind the company. The agent, in his deposition, states, that he never pretended, by anything that he did, to bind the company; and that whenever he was interrogated on the subject, he always stated that he had no such authority. The obligation of an agent’s acts is not to be determined so much by his own or his principal’s ^opinion, as by the acts themselves. What were the acts which the agent of the company was authorized to do ?
He was authorized to receive applications, to examine the promises, determine the character of the risk, agree upon the amount to be insured and the amount of premium, receive such portion of the premium as was to be paid in hand, and take the obligaof the party insured, with such security as he might approve, for any future liability.
The agent is the only person, from the very nature of the case, that can be presumed to have the information necessary to act for the interest of the company, and is the only person with whom the party applying has anything to do. In this instance, Bollmeyer had done everything that it was possible for him to do, on his part; all of which had been agreed upon with the agent. It is not necessary, to perfect a contract of insurance, so as to bind the parties, that a policy should have issued; indeed it is not necessary that any writing whatever should have been executed, by the signature of the parties. (1) Like any other contract, it *456 is only necessary that the minds of the parties should have fully met. See Duer on Insurance, vol. 1, pp. 66, 67.
It is said, however, that it is one of their rules, that the company are to approve the applications sent in by their agents, before such applications and contracts are binding, and that Bollmeyer had notice of that fact. This is based on the fact, that on the blank application, with many other stipulations, is printed the following: “ All policies of insurance are issued from the office of the company at Medina, upon applications *sent in by agents and others, and if approved, will bear date of the reception of such application, unless requested by the applicant to bear date of some future day.” We do not think the qualification, “if approved,” here inserted, reserves to the company the arbitrary right of setting aside, at pleasure, any contract that their agents may make, no matter how fair it may be, or how strictly it may comply with their terms of insurance, or with their directions to their agents. Such a construction would permit them to trifle with the community to a most glaring extent.
The company, in a case where their agent had been imposed upon, or where a contract had been made by him that would operate as a fraud on their rights, would have a right to refuse to ratify such contract, and thus clear themselves from incurring liability. And we suppose this phrase merely refers to such a state of caso. They, no doubt, like any other party, have the right to defend themselves against fraud or' mistake, and in such a case, they would not bind themselves by ratifying such contract by issuing a policy. We think this is what is referred to, and nothing more. In the case now under consideration, it is not contended that everything was not fair, and strictly in accordance with the rules of the company.
We are of opinion that the contract made between McConnell *457 and Bollmeyer was a valid contract, binding on both parties; and that it did not require the ratification of the company.
But it is said that the contract was not, by its terms, to take effect until after the fire occurred ; in other words, that the risk had not commenced, when the loss took place. Amongst the general rules of the company, printed in a pamphlet, which contains instructions to the agents, the by-laws, charter and general rules, is the following provision, which is one of the by-laws of the company:
“All policies issued shall take effect from the day on which the application shall be dated, and the premium note deposited, unless directed by the applicant to be dated on a future day.”
Now, as seen above, the policies are to be issued from Medina ; *but by the terms of this rule, to take effect from the time the application is dated, the application is dated on the 27th of May, before the loss occurred. It is said, however, that by the stipulation, which we have given above, from the printed matter on the blank application, it is required that the policy shall have date from the time of reception of the application at Medina. Taken in the connection in which this is found, it may read either to the reception at Medina, or to the first reception of it by the agent; but when we take it in connection with the general rule, which requires that the policy shall take effect from the time the application is dated, which clearly refers to the time when it is made to the agent, we think there can be little doubt that the reception spoken of on the blank application, refers to the first reception by the agent—this requires no forced construction, and makes the two provisions harmonize. But even if such contradiction existed, it would not avail the defendant. The principle of the rule, that as between parties contracting, in a doubtful case, the construction shall be taken which'is against the party creating the writing, would apply here with peculiar force. It is said, however, and the evidence appears to warrant it, that the custom of the company was to issue the policy, to take effect on the day that tho application was received at Medina; that the defendant had received policies previously, dated in that way, and must have known such custom. This, however, does not appear to have been a universal custom, and would not do' away with the effect of their printed rules, if it were.
*458 This case bears a very strong analogy to the case of Tayloe v. The Merchants’ Fire Insurance Company of Baltimore, 9 How. 390.
In that case, the agent of the company wrote to Tayloe, he being in Alabama, stating the terms on which the comjiany would take the risk, and stating that if Tayloe was agreed to the terms, and would send his check for the amount of the premium, that the matter would be concluded. Tayloe, on receipt of the letter, mailed his check for the amount of the ^premium. Before the letter with the check reached the company, the property was destroyed by fire. The court held, that the contract of insurance took effect from the mailing of the letter with the check, and that the company were liable for the loss.
We think in this case that the contract of insurance took effect from the 27th of May, the time of its being entered into between Bollmeyer and the agent, McConnell, and. that the company are therefore liable for the loss.
Decree accordingly.
Judge Ranney did not sit in this case, having been of counsel for one of the parties.

 Corporations may contract, by parol, within the sphere of their proper *456 functions. Hamilton v. Lycoming Mut. Ins. Co., 10 Law J. 498; 5 West. Law J. 419; Ang. & Ames on Corp., chap. 8, sec. 7. A policy of insurance must be in writing. Cockerill v. Cin’ti Mut. Ins. Co., 16 Ohio, 164, per Bead, J. All the books upon the subject, and decisions, unite in declaring that a policy must be in writing. To hold that there could be such a thing as a verbal policy, would be contrary to all eomme rcial usage and the authority of all the books and decisions. Ib.; Stark Co. Mut. Ins. Co. v. Hurd, 19 Ohio, 149; 2 Cush. 439; 19 Law J., n. s., E. P. 222; 7 West. Law J. 529; 17 Ohio, 192.