By the Court.—Monell, J.
The decision in this case, if it can be sustained upon other grounds, is supported, I think upon sufficient evidence, that the policy had not, at the time the tender was made on the 30th of November, 1870, either lapsed or become void, by reason of the non-payment of any of the premiums previously, or on that day due. The only doubt suggested, was as to the sufficiency of the proof of the president’s authority to bind his company. The construction of the language of that official’s note, that the policy would “remain in force,” namely (in effect), that it should remain in force as a policy merely, without operating as a waiver of the forfeiture, cannot be sustained. Under a general agreement continuing the legal existence of the policy, all its obligations and stipulations continue also ; and anything which had theretofore, or which might thereafter happen, that could be construed into a waiver of previous forfeitures, would likewise continue to be available.
The various extensions of the time, for the payment of the premiums, were made by the president of the de *276 fendant’ s company. As such 'president he was presumedly the agent of the company for the transaction of its general business, and by his acts could bind them to any agreements made by him within the scope of his general authority. And if his acts and agreements operated as a waiver of any of the conditions in the policy, it was a waiver by the company.
But it was strenuously urged on behalf of the defendants, that assuming the facts to be as found by the court, and that there was no legal forfeiture, and that the policy was in full force and binding upon the defendants, still this action cannot be sustained.
The defendants have incurred no liability under the policy. The life insured is yet in existence; and the plaintiff has no cause of action to enforce the performance of any part of the contract.
But she demands that the court shall now declare the policy to be in force, and that she shall now be restored to all her rights under it.
This prayer for relief is in effect a demand to be relieved from a forfeiture which the defendants allege to have occurred, and which they claim annuls the policy.
The plaintiff could doubtless continue to tender payments of the premiums from time to time, as they shall become due, and upon the death of the life insured, in an action upon the policy to recover the amount insured, insist that the policy was then in force ; and upon that issue could show the facts which are now claimed to be a waiver of the forfeiture.
But it is said in reply to this, is she bound to do all that, and wait the uncertain and probably distant event of her husband’s death, before she can ascertain her legal rights under the policy ? Or may she not, in advance of that event, ask to be shown and have her status under the contract declared %
It is peculiarly within the province of courts of equity to relieve against forfeitures. But the usual *277 cases are such, that upon curing or removing the forfeitures, a present cause of action will arise, or some beneficial estate be at once enjoyed. And it is somewhat anomalous to ask such courts to remove a forfeiture' without such a present right of action.
The relief sought in this case is not such as can be claimed to fall within the principles of bills of equity quia timet, yet it is said that the principles which govern such bills are analogous. Mr. Justice Story says of them (2 Story Ay., § 826), “they are in the nature of writs of prevention to accomplish the ends of precautionary justice. They are ordinarily applied to prevent wrongs or anticipated mischiefs, and not merely to redress them when done. The party seeks a court of equity because he fears some future probable injury to his rights or interests ; and not because any injury has already occurred, which requires any compensation or other relief.”
The position which the defendants have taken in respect to the policy in this case does not, it seems to me, bring it within any of the principles governing such bills. They (the defendants) declare the policy to have lapsed and become void by reason of the plaintiff’s default. They have not, it is true, instituted any legal proceeding with a view of having the policy declared and adjudged to be void, and thus foreclosing all rights of the plaintiff under it. But determining that question for themselves, as they claim the right to do, they construe the default as a forfeiture, and insist that there has been no waiver.
There is no doubt of the plaintiff’s right at some time, and in some way, to dispute this position of the defendants ; and it is conceded that it may be done whenever a right of action arises upon the policy. Then, and then only, as the defendants. claim, can the plaintiff assert that there has been no lapsing or forfeiture, and that the policy is in force. But it is contended that although *278 that remedy is conceded, it does not necessarily deprive the party of all other remedies, if any other exist. Nor that it is always necessary to wait until some legal liability arises, for if there is some anterior duty which ought to be performed, which will aid in establishing the legal liability, equity ought and will require the performance of such duty. And we are referred to the case of Taylor v. Mut. Ins. Co., 9 How. 390, which was an action to compel an insurance company to issue a policy. There the court say (p. 405), “that the party had a right to resort to a court of equity to compel the delivering of the policy either before or after the happening of a loss.”
But that was a bill to enforce the specific performance of a contract to insure, and was filed after a loss had happened, and the prayer was to compel the delivery of a policy, pursuant to the agreement, and also for payment of the loss. Justice Nelson, in answer to the objection that there was an adequate remedy at law, observed that before the loss occurred, the appropriate, if not the only remedy was in a court of equity, to enforce a specific performance, and compel the company to issue the policy, and that such remedy was as appropriate after, as before the loss ; to facilitate the proceedings at law. The jurisdiction in that case was sustained because it was a bill for the specific performance of a contract after a loss had occurred, and for no other reason ; and it does not, therefore, furnish us with any aid in this case. This is not an action of that nature, although possibly, in one aspect, the alleged agreement that the policy should be continued in force until the 29th of November, and the further agreement, that until the next day, it should not lapse or become void by reason of the delay and postponement of payment of premiums, might be regarded in the nature of a new contract.
But I do not think it can so be regarded. The effect, and the only effect, that can be claimed for such agree *279 ments is, that they operated merely as a waiver of any supposed forfeiture of the policy, and therefore revived and validated that which was lost; and such effect could he given to the agreements at the proper time, without the aid of a court of equity to enforce them specifically as supposed new contracts.
But apart from the supposed analogies, which it is claimed are furnished in the principles which govern hills in equity, quia timet, or for the specific performance of contracts, it was further claimed that there are ■others which can he successfully invoked in support of this action. They are such as relate to reformation of contracts, removing clouds from titles, to relieve against void contracts, and the like. But those cases are sustained on the ground that there is no adequate remedy .at law at any time, or as in the case of a cloud on title, that the oppressive nature of litigation at law, required to protect the enjoyment of it, affords a proper ground-for equitable jurisdiction.
It is true that that is equity which is founded in natural justice, in honesty and right, and which properly arises ex aequo et bono, and that in the administration of it, it is contradistinguished from a strict adherence to the mere letter of the law. Its rules are more flexible, and better suited to the different postures of cases ; and its ■decrees may be adjusted, so as to meet most, if not all, ■exigencies ; and may vary, qualify, restrain, and model, the remedy, so as to suit it to adverse claims, controlling ■equities, and the real and substantial rights of all the parties {Story, B. § 28).
But the application of those fundamental rules and principles must be to cases where the law has not determined, and is not capable of determining, the matter with all its circumstances; or where, as is commonly said, "the law furnishes no adequate remedy. ¡Nor is it required that the legal right of the party should presently -exist. If it can arrive at a future time, and the legal *280 remedy can then be adequate for the enforcement of the right, and the protection of the party, a court of equity cannot intervene.
It is only where the danger is imminent of the loss of a remedy at law, that the aid of equity can be invoked to save the remedy; and, as far as my examinations have gone, such aid can be used to enforce a present, and never a future liability.
The difficulty with the plaintiff’s case is, that she has no present cause of action upon the policy. She cannot now enforce any of its stipulations or covenants; and no liability of the defendants has, as yet, arisen upon it..
But she seeks to have the policy declared to be a subsisting policy, and to compel the defendants to accept the premiums and acknowledge its validity; in other-words to have it now declared that the policy is not forfeited.
I have endeavored to find some principle upon which this action can be sustained, and I have been unable to> find any, either in law or equity; and the reason is; obvious ; no such principle exists. Indeed, the action, is in hostility to those principles of justice which are-designed for the protection of legal rights, and if sustained, would be subversive rather than promotive of such rights.
The forfeiture claimed by the defendants to have an- , nulled the policy, can only be made effective in answer to a demand upon it for the amount insured. Such a, demand would of necessity be a legal cause of action to-which the defendants would be permitted to show that the instrument upon which it was founded had no validity, and would be entitled to have that issue tried by a. jury.
By endeavoring to secure the aid of equity in advance-of any legal liability, the question of forfeiture, which is strictly a legal defence, is disposed of without the intervention of a jury, which, under the guarantees of the. *281 constitution, cannot be done. The defendants have the undoubted right to insist upon a trial by a jury of all questions involving their liability under the policy, and that is a right which a court of equity is powerless-to deprive them of. It is a right which strikes at the very foundation of the present case, and, if there were no other reasons, would be sufficient to defeat it.
We are not without adjudications on this subject. Two cases have arisen in this court (O’Reily v. Mutual Life Ins. Co., 2 Abb. N. S. 169, and Cohen v. Same, not reported), which were to restore policies of life insurance, forfeited for non-payment of premium. The policy-holders resided in the State of Alabama, during the war of the Rebellion, and failed to make payment of premiums. Furnishing as an excuse for not paying, the suspension of all communication by reason of the war, they demanded the relief. But ’ the court at Special Term, the late Chief Justice Robertson presiding, held that the action in equity could not be maintained. He says (p. 170), 1 ‘ The court cannot make a declaration or proclamation of its opinion to the world now, to be of any avail to the plaintiffs’ representations in recovering the amount insured hereafter; no transfer, or vesting, or divesting of rights would ensue for such a declaration, and nothing could now be decreed to be done as a consequence of such a declaration.” In the case of Cohen, the same learned justice, alluding to the O’Reily case, says: “The relief sought is the same, and the same-reasons prevail against any committal by the court to an opinion before any cause of action could have arisen on the policy.”
In the judgment and the mode of reaching it in this action, manifest injustice has been done the defendants; for, although they had an opportunity to meet the plaintiff’s case and to insist upon the forfeiture, they could not do so in the tribunal which the law allows them to select. Nor can we discover any hardship towards *282 the plaintiff in requiring her to wait until a cause of action arises on the policy. She cannot recover anything at present, and the period is indefinite when she may have a right of action.
But she can perpetuate the testimony she now has to establish a waiver of the forfeiture, and in that way make it available whenever her cause of action arises. She need not, I think, repeat her offer to pay the premium at each stated quarter. One unqualified refusal by the defendants to refuse on the ground of the policy’s having been forfeited, would satisfy the condition to pay, and would effectually estop the defendants from claiming a forfeiture, by reason of the omission to pay or tender such quarterly premiums.
The judgment is erroneous and should be set aside, and judgment absolute ordered for the defendants, with costs.
Note.—Since the decision in this case, a re-argument was ordered and heard by the General Term, and the court reached á different conclusion: affirming the judgment of the Special Term, with modifications.
The case and opinion of the court on the re-argument will be reported in volume 36 of these reports. Befobtebs.