Bichaudson, J.,
delivered the opinion of the court:
On the 1st day of October, 1873, the Postmaster-General published a notice and advertisement inviting proposals for carrying the United States mails, of which all that is material to the present case was as follows:
“ POST-ÜEEICE DePAUTMENT,
“ Washington, October 1, 1873.
“Proposals will be received at the contract-office of this Department until 3 p. m. of February 2, 1874, (to be decided on or before March 2, 1874,) for conveying the mails of the United States in the * * * Territory of Washington, from July 1,1874, to June 30, 1878, on the routes and by the schedule of departures and arrivals herein specified : * * * *'
“43132. From Portland, Oregon, by Port Townsend (W. T.) and San Juan, to Sitka, Alaska, 1,400 miles and back, once a month, in safe and suitable steamboats.
“ Leave Portland on the 1st of every month; arrive at Sitka by the 10th of every month.
“ Leave Sitka on the 13th of every month; arrive at Portland by the 23d of every month.
*601 u Proposals invited to begin at Port Townsend, (W. T.,) 500 miles less.
“ Present pay, $34,800 per annum.”
George K. Otis made a proposal to carry said mails from Portland, by Port Townsend and San Juan, to Sitka, once a month, and back, according to the schedule of departures and arrivals specified in said advertisement, for the compensation of $34,800 per annum, but did not make a proposal to begin at Port Townsend.
Selucius Garfielde, the claimant, made a proposal under said advertisement to carry the mails from Port Townsend to Sitka, on said route No. 43132, for the annual compensation of $26,000, but did not specify the frequency of the service nor the times of departure and arrival.
The Postmaster-General accepted the proposal of the claimant, and gave him written notice accordingly. Subsequently, and before the time for making the formal written contract, he suspended his action thereon, and, upon receiving the opinion of the Attorney-General that the proposal of Mr. Garfielde was not, “ under the circumstances of the ease, entitled to be regarded as a bid after due advertisement made, such as would authorize a contract to be awarded thereon,” (14 Opin., 389,) he accepted the proposal of Mr. Otis, and entered into a contract with him to carry the mails from Portland, by Port Townsend and San Juan, to Sitka, on said route No. 43132, according to said advertisement, and refused to make any contract with the claimant, or to recognize any as having been made by the acceptance of his proposal in the first instance.
The petitioner brings this action to recover damages for non-fulfillment, on the part of the defendants, of thecontract which he maintains was made with him by the Postmaster-General by the acceptance of his proposal. It has frequently been held that when a bid has thus been accepted and the bidder is ready, willing, and able to perform his part of the engagement, the other party, accepting the bid and refusing to enter into a formal, written contract, is liable to the same extent as he would have been had the contract been written out in full and signed by both parties. (Adams’s Case, 1 C. Cls. R., p. 192; Mayer’s Case, 5 C. Cls. R., p. 317; Tayloe v. Merchants’ Fire Insurance Company, 9 How., 390; Mactier’s Admr. v. Frith, 6 Wend., 103; *602 Pratt v. The Hudson River Railroad Company, 21 N. Y. Court of Appeals, 305.)
The defendants are therefore liable in this action if the Postmaster-General had authority, under the law and regulations, to accept, as he at first did, the claimant’s bid. When once lawfully accepted the contract would become binding on both parties, and the action of the Postmaster-General afterward, in refusing to acknowledge it and to perform his engagements thereby made, would be wrongful, and the claimant would be entitled to damages. But if the Postmaster-General exceeded his authority and undertook to make a contract in violation of law, then his act in accepting the proposal of the claimant was void, and there is no binding obligation on the part of the defendants.
The question presented for our determiuation, and upon which the decision must turn, is whether or not the words in the advertisement, “proposals invited to begin at Port Townsend, (W. T.,) 500 miles less,” are a sufficient compliance with the statute to authorize a proposal for that service alone by the claimant and an acceptance by the Postmaster-General.
The act of Congress of June 8, 1872, section 243, (17 Stat. L., 313,) provided “that before making any contract for carrying the mail, other than those hereinafter excepted, the Postmaster-General shall give public notice by advertising once a week for six weeks in one or more, not exceeding five, newspapers published in the State or Territory where the service is to be performed, one of which shall be published at the seat of government of such State or Territory; and such notice shall describe the route, the time at which the mail is to be made up, the time at which it is to be delivered, and the frequency of the service.” * * (Rev. Stats., sec. 3941.) And then followed a provision, in section 265, “ that the Postmaster-General may enter into contracts for carrying the mail, with railway companies, without advertising for bids therefor.” * * (Rev. Stats., sec. 3942.)
Under similar provisions, applicable to all Departments of the Government, (Rev. Stats., sec. 3709,) this court has uniformly held all contracts void which were not made upon advertisements previously published. A compliance with the statute has been considered a condition-precedent, upon the performance of which only could a binding contract be made *603 by the officers of the United States. The Government acts by its public officers, and their powers and duties are prescribed and limited by laws which they must strictly follow. These laws all parties dealing with public officers are bound to know, and in cases like this such parties have the means of determining for themselves how far the power of the officers extends, and if the latter attempt to bind the Government otherwise than as duly authorized, the United States are not liable. (Childs v. United, States, 4 C. Cls. R., p. 176; Wentworth v. United States, 5 C. Cls. R., p. 302; United States v. Speed, 8 Wall., 77.)
If an advertisement inviting proposals is a condition-precedent to the making of a contract, so is a compliance with the terms of the advertisement when prescribed by law, and it must be proved.
The claimant contends that the advertisement in this case was for two routes, or the same as two separate advertisements, in response to which he was right in bidding upon one of them only. If that be so, then there was a serious defect in the notice which invited proposals for the second route from Port Townsend to Sitka, in that it did not describe the time at which the mail was to be made up, the time at which it was to be delivered, and the frequency of the service, as required by statute. These are specified as to the main route from Portland set forth in the first part of the advertisement, but those specifications were not by direct reference made applicable to any service which was invited from Port Townsend, and in one important particular the two services would seem to require different specifications. The provision for the delivery of the mails once a month might apply equally well to both, but it cannot be supposed in this age, when Congress and the Post-Office Department are making such great effort and expending such a vast amount of money to secure swift transportation of newspapers, letters, and correspondence, that it was contemplated allowing the same time, ten days, for taking the mails 500 miles from Port Townsend as for taking them 1,400 miles from Portland to Sitka. „
This defectinthe advertisement the claimant did not attempt to cure in his proposal, by specifying the frequency of the service, and the times of departure and arrival of his conveyances, so that with both together those elements of a contract are left in doubt and uncertainty.
*604 The number attached to the Portland route, “ No. 43132,” and the words “ present pay, $34,800 per annum,” together with the specifications for that route, being in exact compliance with the law, while for the other route there are no specifications whatever, show conclusively, we think, that but one route was intended to be offered for competition ; to propose for which was, by the regulations, absolutely necessary in order to constitute one a “ regular bidder.”
• Why, then, was the clause “ proposals invited to begin at Port Townsend, (W. T.,) five hundred miles less,” added? With the regulations of the Department before us, and in the light which they furnish*we think it is not difficult to determine for what purpose those words were inserted, and what are their force and effect. No. 267 of the regulations of the Department is as follows: “Bidders should first propose for service strictly according to the advertisement, and then, if they desire, separately for different service; and if the regular bid be the lowest offered for the advertised service, the other proposition may be considered.”
The range of proposals for such “different service” is wholly unlimited by this regulation, and parties making bids might waste their time and incur useless trouble in proposing a great variety of service never desired or contemplated by the Department, and contrary to its well-settled policy or previous determination. To obviate this difficulty, and to direct bidders’ minds to what “ different service ” the Postmaster-General would take into consideration, the clause was added to the advertised route, inviting proposals to begin at Port Townsend, merely as a suggestion to bidders, to be availed of under the two hundred and sixty-seventh regulation, in respect to such different service; and the frequency of the service and the times of departure aud arrival were purposely omitted, in order that bidders might make such proposals as to those particulars as they saw fit.
It was a convenient and useful suggestion directing the minds of bidders to the real wants and views of the Department, while not confining them withiu the narrow limits required by statute for the regular route. So, too, it was fair to all parties, conveying to them alike a knowledge of the kind of different service, which in the particular case had, perhaps, been contemplated, and whieh might prevent those who had otherwise ob *605 tained such information from gaining an advantage over others who had been less fortunate.
The fact that the for in of the advertisement used in this case was in conformity to the long-established practice of the Department, and that nine hundred and seven similar notices were found, confirms us in the opinion that a clause thus added, such as that now under consideration, must have been and was adopted on account of the rule which we have cited, and as a suggestion thereunder, for we cannot believe that successive Postmasters-General would regard it as a compliance with the law, which expressly required the frequency of the service and the times of departure and arrival' to be specified. It is more reasonable to suppose that this practice of the Department originated and continued in operation through a series of years from a careful consideration of the regulations, than from a careless and loose execution of the express requirements of the statute.
The practice of the Post-Office Department in relation to the acceptance or rejection of bids under such advertisements was not proved, and we are not informed of the construction usually adopted by that Department in such cases.
These views dispose of the claimant’s case. He bid only for the special, incidental, or “ different service,” suggested by the advertisement, and as he did not first propose for service strictly according to the advertisement, his bid, by the regulations, could not be taken into consideration. The bid of George K. Otis was the only regular bid, “ strictly according to the advertisement,” and the contract was rightly awarded to him under the law and the regulations, which alike require that the award shall be made to the lowest bidder. The Postmaster-General having erred in accepting the bid of the claimant, had a right and it was his duty to correct his error. His act in accepting the claimant’s bid was in violation of law, and of no force and effect, and the petitioner acquired no rights thereby.
The judgment of the court is that the petition be dismissed.