FIDELITY TRUST & GUARANTY CO. v. FOWLER WATER CO. et al.

(Circuit Court, D. Indiana. January 21, 1902.)

No. 9,677.

1. MUNICIPAL CORPORATIONS—POWERS—GRANTING FRANCHISE TO WATER COMPANY.

Under the law of Indiana, as settled by decision, the fact that a town is financially unable to construct a system of waterworks does not disable it from granting a franchise to a water company for the construction by it of such system for the benefit of the town and its inhabitants.

2. SAME—INDEBTEDNESS—CONTRACT TO PAY WATER RENTALS.

A contract by a city or town to pay hydrant rentals to a water company at stated times in the future does not create an indebtedness for the aggregate amount of such rentals, within the meaning of the provision of the constitution of Indiana limiting the indebtedness of such corporations.

3. SAME—CONTRACTS—DISCRETION OF COUNCIL.

In a contract between a city or town and a water company for the rental of fire hydrants, the number of hydrants to be furnished, the rental to be paid therefor, and the times and amounts of the several payments, are all matters which it is competent for the parties to agree upon, and as to which the discretion of the municipal authorities cannot be controlled by the courts, in the absence of fraud or such a gross abuse of discretion as to evince bad faith.

4. SAME—POWERS—PURCHASE OF PROPERTY SUBJECT TO MORTGAGE.

A municipal corporation, having no power to incumber its property by mortgage, in the absence of express legislative authority, is without power to purchase and hold property which is subject to a mortgage. Such a purchase, moreover, would create an indebtedness on the part of the corporation to the extent of the mortgage debt, although it did not obligate itself to pay such debt.

5. SAME—VALIDITY OF ORDINANCE—CREATION OF ILLEGAL INDEBTEDNESS.

A town in Indiana, having voted to construct waterworks, but being unable to do so without incurring an indebtedness beyond the constitutional limit, passed an ordinance granting a franchise to a water company to construct the works in accordance with certain specifications. It authorized the company to issue a series of bonds, maturing in from 1 to 30 years, and secured by a mortgage on the plant. It further contained a contract by which the company was to furnish a number of fire hydrants, for which the town agreed to pay a stipulated rental semiannually; the same to be paid directly to the trustee for the bondholders; such rentals being sufficient in amount to keep up the interest on the bonds and to pay the same as they matured,—and such provisions were printed on the back of the bonds. *Held* that, in the absence of fraud which would render the agreement to pay hydrant rentals invalid, neither the ordinance, nor the bonds issued in accordance therewith, were rendered invalid, as against bona fide purchasers, by a further provision of the ordinance giving the town an option to

purchase the waterworks, subject to the mortgage. within 30 days after their completion, although the town had no lawful power to make such purchase, since the option created no obligation on the part of the town to purchase or to create an illegal indebtedness.

**6.** SAME.

The bonds having been issued and sold to bona fide purchasers, such purchasers were charged only with knowledge of such facts as were disclosed by the ordinance and records; and the contract by the town to pay hydrant rentals, on the strength of which the bonds were sold, being in itself legal and within the corporate powers of the town, the latter could not invoke to defeat such contract as against the bondholders a secret agreement between its officers and the water company that the town should exercise its option to purchase the works, in violation of law, nor the actual exercise of such option after the bonds were sold, by taking a conveyance of the works subject to the mortgage, but the bondholders had the right to have such conveyance adjudged illegal in so far as it affected their rights.[1]

**7.** EQUITY JURISDICTION—ENFORCING LEGAL DEMANDS—DETERMINING ENTIRE CONTROVERSY.

A town, having taken a conveyance of waterworks from a company which had previously executed a mortgage thereon to secure its bondholders, and having gone into possession, was a necessary party to a suit against the company to foreclose the mortgage; and a court of equity, having thus obtained jurisdiction of the parties and of the subject-matter, has jurisdiction in such suit to enforce a contract between the town and company, made prior to the issuance of the bonds, by which the town agreed to pay hydrant rentals directly to the mortgage trustee for the benefit of the bondholders.

In Equity. On exceptions to report of special master.

This is a suit in equity to procure the foreclosure of a deed of trust executed by the water company to secure the payment of bonds issued by it amounting to $30,000. The deed of trust covers all the tangible property, franchises, and rights of the water company. On June 17, 1895, an election was duly had and held by the qualified voters of the town of Fowler to determine whether or not the town should construct a system of waterworks, at which election 283 voted for, and 9 against, such proposed construction. The board of trustees advertised for bids for the construction of the proposed works, and three bids were received, namely, one for $37,800, one for $35,300, and one for $34,985. These bids were rejected; the board of trustees being of opinion, and so resolving, that the town was not financially able to construct the works. The board, on further consideration, determined that there was urgent need for a system of waterworks, and thereupon determined to negotiate a franchise on the best terms obtainable with the Fowler Water Company. On August 9, 1895, the board unanimously adopted an ordinance for the supply of wholesome water to the town and its inhabitants, and authorizing the Fowler Water Company to construct, maintain, and operate a system of waterworks therein.

The first section grants authority and permission to the Fowler Water Company to construct, maintain, and operate a system of waterworks in the town according to certain prescribed plans and specifications, and for that purpose permission is granted to use the streets, alleys, bridges, sidewalks, and public grounds for laying, placing, taking up, repairing, and connecting water mains. hydrants. pipes, and valves for the service of water. The rights, privileges. and franchises were vested in the water company for 50 years from and after the adoption of the ordinance, subject to the right of the town to purchase as hereinafter provided.

The second section provides that the water shall be wholesome in quality, and shall be pumped from tubular wells; that the pumps, engines, boilers, standpipe, engine house, and other buildings and machinery

---

[1] Bona fide purchasers **of** municipal bonds, see note to Pickens Tp. v. Post, 41 C. C. A. 6.

shall be erected on ground within the corporate limits; that the pumping station shall be constructed of brick, practically fireproof, and the pumps shall be set as shown on the plans, or as directed by the consulting engineer; that the pumps shall have an aggregate capacity of not less than 1,000,000 gallons in 24 hours; that all mains and piping shall be cast iron, and tested under a pressure of 300 pounds to the square inch, and of various sizes, quality, and finish, as required by the plans and specifications; that all mains shall be laid in accordance with the plans and specifications, and joined in the most skillful manner, and placed where indicated on the plans and specifications; that the fire hydrants shall not be less than 49, and shall be placed as required by the plans, and shall be of modern standard style; that the standpipe shall consist of a steel reservoir 100 feet high by 12 feet in diameter, on a stone and concrete foundation; that the engines, boilers, pumps, and all other machinery, and all kinds of materials for the erection and completion of the waterworks system, shall be of the pattern and quality described in the plans and specifications, and all work shall be done in strict accordance therewith, and subject to the approval of the consulting engineer or superintendent.

The third section provides that the waterworks shall be completed and ready to be finally tested on or before December 1, 1895; that the water company shall furnish a bond in the sum of $10,000 for the completion of the works according to the plans and specifications, and to hold the town harmless from all damages by reason of the construction of the same.

The fourth section provides that the streets, etc., shall not be unnecessarily obstructed in constructing the works; that the streets, etc., shall be restored to their former condition, and that the water company shall hold the town harmless on account of the negligence of itself or its agents; that danger lights and temporary barricades shall be erected at night.

The fifth section provides that as soon as the works are completed the engineer or superintendent shall report to the board of trustees, and a final test shall be made; that if, on such test, the works comply with the test prescribed in the specifications, and if the work shall in all respects conform to the plans and specifications, the board of trustees shall accept the same, and a certificate to that effect signed by the president of the board of trustees, and attested by the town clerk, shall be delivered to the water company.

Section 6: "For the purpose of enabling said water company to realize a portion of the money with which to erect and complete said waterworks, said corporation may mortgage said entire water works plant, including the engines, pump-house and stand-pipe and real estate connected therewith, all machinery, mains and piping, and all other property forming a part of said water works system, including the rights and franchises of this ordinance, to secure a loan of said corporation not exceeding at any time within one year from the date of the completion of said water works, the sum of $30,000. But said company shall not alienate said plant otherwise except to the town of Fowler within one year from the date of the completion of the said water works plant according to said plan and specifications. But nothing herein nor in this ordinance shall be so construed as to make the town of Fowler liable for the payment of any portion of said $30,000 of bonds and mortgage."

Section 7: "In consideration of the furnishing of water for the hydrants hereinafter enumerated, and in further consideration of the benefits to accrue to the town of Fowler by the erection of said system of water works, and of the mutual covenants and agreements in this ordinance contained, the said town of Fowler agrees to rent and hereby rents from said Fowler Water Company, its successors or assigns, forty nine fire hydrants such as are described in the plans and specifications herein mentioned, for the period of twenty years beginning December 1, 1895, which hydrant rentals the town of Fowler hereby agrees to pay to the said Fowler Water Company, its successors or assigns, semi-annually, at the following rates: [Here follows a detailed statement of the amount of each semiannual payment.] And in case the said water company causes an encumbrance by mortgage to be placed upon its property to secure an issue of bonds for

an amount not exceeding the sum hereinbefore mentioned, then the town of Fowler agrees to pay each and all of the hydrant rentals herein named during the existence of such encumbrance or mortgage directly to the trustees named in said encumbrance or mortgage. And in the event that hydrants are constructed on such water works system in excess of forty nine in number, said town agrees to pay an annual rental of forty dollars for each such additional hydrant so placed on the system; such additional hydrant rental to be payable semi-annually on June first and December first in each year to the said Fowler Water Company, its successors or assigns."

The eighth section provides that the water company shall keep the hydrants supplied with water, and keep them in good repair; that the chief of the fire department of the town shall have supervision of them, and shall cause them to be inspected and tested at any time, and, if he finds any defective, he shall give notice at once to the person in charge of the waterworks, and the water company shall at once put the same in repair.

The ninth section provides for the rates which may be charged to private consumers of water.

Section 10: "Said town shall annually, during said term hereinafter mentioned, levy and collect a tax sufficient to pay said hydrant rentals accruing said years; the said tax when collected shall be kept and known as the 'Hydrant Fund,' and shall be held inviolate and is hereby irrevocably pledged and appropriated for the payment of such hydrant rental in the manner herein provided. Provision to meet the requirements of this section shall be made in the annual appropriation bill."

Section 11: "The town of Fowler shall have the right, for the period of thirty days as hereinafter specified, to purchase said water works from the said water company; and in case the said town shall exercise the option hereby granted, said water company shall convey to said town said water works plant, together with all real estate, buildings, machinery, fixtures and piping connected therewith, and all the rights and franchises appertaining thereto, upon the terms and conditions following, to-wit: If said town shall exercise the said option within thirty days after said water works shall have been completed, tested, appr ved and accepted by said town as hereinbefore provided, said water company shall convey to said town by good and sufficient deed said water works plant, with all the real estate, buildings, machinery, tools, fixtures and piping connected therewith, and all the rights and privileges appertaining thereto, for the sum of four thousand dollars, such payment to be made at such time and in such manner as may be agreed upon between said town and said water company, but to be made on or before said town shall take possession of said water works. Said sale to be made subject to the encumbrance of any bonded indebtedness theretof re placed upon said plant by said water company as aforesaid, but free and clear from all liens, claims and charges other than said mortgage indebtedness and accrued interest thereon; said town shall covenant in said conveyance to it to keep said plant in good repair and operating condition. Said deed of conveyance shall recite that said conveyance is made expressly subject to said encumbrance and all its terms and conditions, but that said town does not assume the payment thereof."

The twelfth section provides for the acceptance by the water company of the ordinance within ten days from the date of its adoption.

The acceptance of the water company was duly executed and filed on August 14, 1895, together with the required bond, which was accepted and approved by the board of trustees of the town of Fowler on said date. The town became a stockholder in said water company, by subscribing for and taking $1,450 of its capital stock.

On September 2, 1895, the water company executed its deed of trust to the complainant to secure 60 negotiable bonds, in the sum of $500 each. These bonds were duly issued, and have passed into the hands of innocent holders for value, who were such owners and holders prior to November 9, 1895. The waterworks were completed on and before November 9, 1895, and on that date the same were duly tested and accepted by the town of Fowler; and a certificate showing their completion in all particulars

as required by the plans and specifications, and their test and acceptance by the town, was duly issued and furnished to the water company. On November 9, 1895, the town exercised its option to purchase said waterworks, and on November 11th the water company executed to the town a deed of conveyance on the terms and conditions required by section 11 of the ordinance. The town has paid the first four of said installments of hydrant rentals in full to the complainant. These rentals were applied to the payment of the first four of said bonds and the interest coupons falling due prior to June 1, 1898. The town has made default in paying the hydrant rentals falling due June 1, 1898, and from thence hitherto. The town having defaulted in paying the rentals, the water company has been unable to pay any part of the principal and interest falling due on said bonds and coupons on and after June 1, 1898, and has wholly failed to do so. Thereupon the Fidelity Trust & Guaranty Company, on the request of the bondholders, filed its bill against the town of Fowler and the Fowler Water Company for the foreclosure of said trust deed. The bill alleges the execution of the deed of trust to the complainant, its acceptance of the trust, and the due recording of the deed of trust; that it secured the payment of 60 negotiable bonds, of $500 each, payable to bearer, at semiannual intervals from June 1, 1896, to June 1, 1915; that the bonds were negotiated, and are in the hands of innocent purchasers for value; that default has been made in the payment of the principal and interest which has fallen due on and since June 1, 1898; that the whole debt has been matured as provided for in the deed of trust; that the water company on November 9, 1895, without the knowledge or consent of the complainant or of the holders of any of the bonds, conveyed the waterworks to the town of Fowler, and the town immediately took, and still retains, possession of the same.

The answer need not be referred to, except as to those parts which assail the validity of the ordinance of August 9, 1895. It alleges that, as matter of fact, the ordinance was enacted and the contract entered into between the town of Fowler and the Fowler Water Company, and the bonds and mortgage were issued by the latter company, "in pursuance of a scheme, plan, and purpose entered into between said Fowler Water Company, its officers and agents, and the said town of Fowler, its board of trustees and agents, to procure, in violation of law and in defiance of the thirteenth article of the constitution of Indiana, the construction of a system of waterworks to be ultimately owned by said town of Fowler, and at the same time to evade the provisions of said article of the constitution forbidding the creation of a debt in excess of two per cent. of the taxable property of the town." It further alleges "that the said Fowler Water Company and the trustees and officers of the said town of Fowler formed, concocted, and contrived a scheme to enable the said town of Fowler to buy said waterworks plant and system, and ostensibly to pay therefor the sum of four thousand dollars, as recited in the deed of said Fowler Water Company to said town of Fowler, and to carry into effect the said scheme so contrived, formed, concocted, and carried into effect, in order to enable the said town of Fowler to evade and avoid the provisions of article 13 of the constitution of the state of Indiana, imposing a limit upon the power of a municipal corporation to incur any debt in excess of two per centum of the taxable property of such municipal corporation."

There was a general replication. The case was referred to a special master, who has made his report, to which the complainant has filed exceptions, assailing both findings of fact and conclusions of law. The language employed by the special master in his third conclusion of law raises a doubt as to whether he meant to hold that the ordinance of August 9, 1895, was void on its face, or whether he meant to hold that some plan or scheme outside of the ordinance renders it void. Other facts in the case, so far as material, will appear in the opinion of the court.

W. H. Latta, Rogers, Locke & Milburn, and Wood & Oakley, for complainant.

Miller, Elam & Fesler, Elliott, Elliott & Littleton, and Rollo B. Oglesbee, for defendants.

BAKER, District Judge (after stating the facts). Whether or not any of the exceptions ought to be sustained must be resolved by the consideration and determination of three principal questions: First. Is the ordinance rendered invalid, as to the holders of the bonds, by what appears on its face, taken in connection with the recitals in the record of the board of trustees of the town of Fowler at and before the adoption of the ordinance, and its acceptance by the water company? Second. Is the ordinance rendered invalid by the subsequent purchase of the waterworks by the town of Fowler pursuant to the option reserved therein, or by any other subsequent act or acts of the board of trustees of said town? Third. If the ordinance, as between the holders of the bonds and the town of Fowler, is valid, may the court determine the amount now owing by the town of Fowler for hydrant rentals, and decree that said town pay the same to the complainant?

1. On June 17, 1895, pursuant to the petition of 171 freeholders therefor, the board of trustees of the town of Fowler caused an election to be held by the qualified voters of the town to determine whether or not the town should construct, own, and operate a system of waterworks. At the election there were cast 283 votes for, and 9 votes against, the construction of the proposed works to be erected and owned by the town. The board of trustees advertised for bids for said waterworks, and three bids were received for their construction, as follows: One for $37,800, one for $35,300, and one for $34,985. On consideration, all the bids were rejected; the board of trustees deciding that the town was not financially able to construct the waterworks. The board, on further consideration, determined and resolved that there was urgent need for a system of waterworks, and thereupon resolved to negotiate a franchise for their construction on the best terms obtainable. These are the only facts shown by the record of the board of trustees prior to the adoption of the ordinance. The water company on September 2, 1895, pursuant to the ordinance, issued 60 negotiable bonds, of $500 each, bearing interest coupons; the bonds and coupons payable to bearer at different times, as specified in said bonds and coupons, beginning June 1, 1896, and ending June 1, 1915. On the back of each bond was printed the list of payments of hydrant rentals to be made as provided in the ordinance, with the statement "that the town of Fowler, by an ordinance passed by its board of trustees, and approved August 9, 1895, agreed and bound itself to pay semiannually, on June first and December first of each year, rentals for forty-nine hydrants on the waterworks plant of the Fowler Water Company, in said town," in the sums specified in the ordinance. On the back of each bond was also indorsed the following statement:

"Such hydrant rentals to be paid by said town directly to the Fidelity Trust and Guaranty Company of Buffalo, New York, trustee, to be applied to the payment of the principal and interest of the series of first mortgage bonds of the Fowler Water Company, aggregating $30,000, of which series the within bond is one."

This last recited statement was attested on each bond by the signatures thereunder of the president and clerk of the board of

trustees of the town of Fowler. The complainant and the holders of the bonds are chargeable with notice and knowledge of the foregoing facts.

But the fact that the town was financially unable to construct a system of waterworks did not disable it from granting a franchise to a water company for the construction by it of such system. This doctrine is too firmly settled in this state to be longer open to debate. City of Valparaiso v. Gardner, 97 Ind. 1, 49 Am. Rep. 416; Crowder v. Town of Sullivan, 128 Ind. 486, 28 N. E. 94, 13 L. R. A. 647; City of South Bend v. Reynolds, 155 Ind. 70, 57 N. E. 706, 49 L. R. A. 795, and cases therein cited. No inference of fraud or wrongdoing can be drawn from the fact that the town, being financially unable to construct a system of waterworks, granted a franchise to the Fowler Water Company, authorizing it to erect such system for the benefit of the town and its inhabitants. It had, incontestably, the right to adopt an ordinance granting a franchise to the Fowler Water Company for that purpose, if it chose to do so, in the absence of fraud. Having, then, the right to adopt the ordinance, does the ordinance contain anything within its four corners showing a violation of the constitution or laws of this state? We will first examine the ordinance, omitting for the present the consideration of section 11. By a long line of decisions, beginning with City of Valparaiso v. Gardner, 97 Ind. 1, 49 Am. Rep. 416, and continuing unquestioned to City of South Bend v. Reynolds, 155 Ind. 70, 57 N. E. 706, 49 L. R. A. 795, it has been uniformly held that an agreement by a city or town to pay, for water, light, or other thing pertaining to its ordinary and necessary expenses, a certain sum, annually or semiannually, out of its revenues to be raised by an annual tax levy, does not create a debt, within the true construction of article 13 of the constitution of this state. It is said in City of South Bend v. Reynolds, supra:

"It is settled in this state that if a city contracts for water, light, or other thing which pertains to its ordinary and necessary expenses, and agrees to pay for the same annually or monthly as furnished, such contract does not create an indebtedness for the aggregate sum of all the annual or monthly payments, because the debt for each year or month does not come into existence until it is earned."

The hydrant rentals agreed to be paid would not become an indebtedness until they had been earned. The evidence shows that the annual revenues of the town, if the tax levy had been made as it was agreed that it should be, would have been in excess of the amount of the semiannual hydrant rentals agreed to be paid. If the hydrants put in were no more than the needs of the town required, and if the rentals agreed to be paid therefor were reasonable, no reason is perceived why the town and the water company might not arrange the time and amount of such payments as would best subserve the interests of either party. It is said that the amount to be paid differs in different years, and that some of the semiannual payments are larger than others. That was a matter within the discretion of the board of trustees of the town, provided the rentals agreed to be paid did not exceed the revenues which might lawfully be ap-

plied to their payment. Within these limits, the discretion of the board of trustees is uncontrollable by the court, in the absence of fraud or an abuse of discretion so gross as to evince bad faith. The power given to municipal corporations to contract for water is purely a business power, and the method of its exercise is discretionary. City of Valparaiso v. Gardner, supra. The law is firmly settled that discretionary powers vested by law in municipal corporations are not subject to judicial control, except in cases where fraud is shown to exist, or the discretion is being grossly abused, to the oppression of the citizen. Seward v. Town of Liberty, 142 Ind. 551, 42 N. E. 39. The making of a contract for the supply of water was a matter delegated to the board of trustees of the town of Fowler, to be exercised according to its discretion; and in the absence of fraud, or of an abuse of discretion so gross as to evince bad faith, its action, while within the authority delegated to it, is not subject to review by the courts. City of Vincennes v. Citizens' Gaslight Co., 132 Ind. 114, 126, 127, 31 N. E. 573, 16 L. R. A. 485.

The special master has found that more hydrants were rented than the needs of the town required, so as to create a fund sufficient to pay the mortgage indebtedness, and that this was a mere device to evade the constitutional prohibition against creating a debt in excess of 2 per cent. of the value of the taxable property of the town. The court has read the evidence, and is of opinion that it does not warrant the special master's conclusion. The question of how many hydrants were needed by the exigencies of the town was one to be determined by the board of trustees according to its judgment, in the absence of fraud. There is no evidence of fraud, nor does the evidence show any gross abuse of discretion. The most that can be gathered from the evidence is that there was a difference of opinion on this question. The same observation is true as to the amount agreed to be paid for hydrant rentals. In the case of Seward v. Town of Liberty, supra, it was shown that the board of trustees of the town had entered into a contract agreeing to take and pay for gas three times the amount for which the same company furnished gas to its private consumers, and it was held that this neither showed fraud, nor such gross abuse of discretion as would justify judicial interference. No such case of abuse of discretion is shown here. Indeed, as appears from an examination of the answer, no charge of fraud is made against the board of trustees; nor is there shown to have been any abuse of discretion, having regard to the present and future needs of the town. The amount agreed to be paid for hydrant rentals is shown to be about the same as was paid in other towns at the time the ordinance was adopted. In the opinion of the court, nothing is found in the ordinance to invalidate it, unless it be found in section 11, and in what was done under and pursuant to that section.

And, first, did the section, prior to the exercise of the option, render the ordinance invalid and unenforceable? At the time the ordinance was adopted, as well as at the time when the option was exercised, the town of Fowler had no authority or power to purchase the **waterworks** subject to the incumbrance of $30,000. If the town had

owned the waterworks free of incumbrance, it could not have executed a valid mortgage upon them. No municipal corporation has any power or authority to incumber its property by mortgage, in the absence of legislative authority so to do. If a municipal corporation should accept a conveyance of property subject to a mortgage, it must pay off the mortgage debt, or lose the property. The purchase of the waterworks by the town of Fowler, subject to the incumbrance created by the deed of trust, would create an indebtedness to the full extent of such incumbrance. Mayor, etc., v. Gill, 31 Md. 375; Waterworks Co. v. Trebilcock (Mich.) 58 N. W. 371; Earles v. Wells, 94 Wis. 285, 68 N. W. 964, 59 Am. St. Rep. 886; Brown v. City of Boston (Mass.) 60 N. E. 934. It is apparent that the town of Fowler on August 9, 1895, as well as on November 9, 1895, was constitutionally disabled to purchase the waterworks from the Fowler Water Company. Did such disability render the other provisions of the ordinance invalid and unenforceable, prior to the exercise of such option? This is a question of municipal power, to be determined by the constitution and laws of this state.

, It is settled by the decision of the supreme court in City of South Bend v. Reynolds, 155 Ind. 70, 57 N. E. 706, 49 L. R. A. 795, and authorities there cited, that an option to purchase, contained in an ordinance granted by a city indebted at the time to an amount which disabled it to purchase, does not impair the validity of the ordinance in other respects. In this case the city of South Bend, by an ordinance duly accepted, entered into a contract with James Oliver which provided that he should erect a suitable building for a city hall, at a cost not exceeding $75,000, upon a lot owned by the city. The building, when completed, was to be leased to the city for 12 years, with a right of renewal, at an annual rental of $7,200, which the city agreed to pay annually. Oliver gave and the city reserved an option to purchase the building at the termination of the lease, or at any time during the term. Reynolds, a taxpayer, brought suit against Oliver and the city to enjoin them from carrying the ordinance into effect. It was held that the contract for the payment of rent was valid. The court said:

"The only contract of the city is to pay an annual rent of $7,200, which is admitted to be only a fair rental value for said building. * * * Under said contract the city is under no obligation whatever to pay anything for the erection of said building, or to purchase the same when erected. If it should attempt to exercise its option to purchase said building, but cannot do so without violating the constitutional limitation as to becoming indebted, it may be enjoined from exercising such option. No facts are alleged in the complaint showing that the current revenues of the city will not be sufficient to pay the indebtedness for rent under said contract each year when the same comes into existence, including all other expenses for which the city is liable. The allegations of the complaint do not show, therefore, that said contract creates any indebtedness in violation of the constitution."

The same doctrine is maintained by other courts of high authority. In Stedman v. City of Berlin (Wis.) 73 N. W. 57, the ordinance contained an option authorizing the city to purchase the system of waterworks within six months after its completion, and provided that the amount to be paid should be the amount of the bonded indebtedness

of the water company, and, in addition thereto, the amount which the enlargement of the plant should cost in excess of such bonded indebtedness. In a suit brought by a taxpayer of the city to enjoin the carrying out of the contract, and to set aside the ordinance on the ground that it was beyond the power of the city to enact the same, because thereby a debt was created in excess of the constitutional limit, it was held that the contract to pay rent for the hydrants was valid and enforceable, notwithstanding the option reserved. After deciding that the contract for the payment of annual hydrant rentals did not create a debt, but was only a current expense to be paid as the water was furnished, the court held that the option clause in the ordinance created no liability and imposed no obligation. The court said:

"It is clear that the city has not exceeded its constitutional limit to contract indebtedness. The city is under no obligation to buy the waterworks constructed under the franchise in question. It has simply stipulated for an option to buy the same on the terms stated, as it may find it prudent or advantageous for it to do so or not. It may decline to purchase, whenever the proper time for that purpose arrives, and this will put an end to the entire matter."

To the same effect is the case of Water Co. v. Woodward, 49 Iowa, 58. There, as here, it was insisted that the stockholders of the water company were not required to pay anything; that the waterworks were in fact constructed with bonds, or the proceeds thereof; and that the water company did not contribute anything for the purpose of construction. It was further urged there, as here, that the ordinance attempted to do by indirection what could not be done directly, and thus to evade the constitutional limitation on the power of the town to create an indebtedness. We say, as was said by the supreme court of Iowa:

"If this be conceded, and yet by the means adopted no debt is incurred or obligation assumed by the city which is illegal, it is difficult to see why the means adopted are unconstitutional."

It follows, therefore, that the reservation by the town of an option to buy the waterworks within 30 days after their completion and acceptance did not render the ordinance invalid or unenforceable.

Nor is there anything disclosed on the face of the bonds, or in the indorsement on their back, which would impart notice of the invalidity of the ordinance or of the trust deed or of the bonds. Such negotiable bonds, in a certain sense, are the representatives of money, and freely pass by delivery in the markets of all commercial countries. To accomplish this purpose, the holder of a perfected bond must be deemed to be the true owner, and be able to invest an innocent purchaser for value and before maturity with an unimpeachable title. The title of a bona fide holder of such bond ought to stand on as secure a foundation as that of a person who receives a bank note in the ordinary course of business. Any other doctrine would undermine the very structure of commercial law, and shake the foundations of such paper credits.

The certificate of the president and clerk of the town of Fowler indorsed upon the bonds constituted a representation of the validity

of the contract to pay rent, and that such rent would be applied to the payment of the principal and interest of the bonds. The town ought not now, after money has been paid to the waterworks company on such bonds on the faith of such representations, to be permitted to repudiate them. Goodman v. Simonds, 23 How. 343, 15 L. Ed. 934.

2. Is the ordinance rendered invalid, in so far as the town of Fowler has contracted to pay semiannual hydrant rentals, by the subsequent purchase of the waterworks pursuant to the option reserved, or by other subsequent acts of its board of trustees? The only act set up in the answer subsequent to the adoption and acceptance of the ordinance, material to be considered, in addition to the purchase of the waterworks, is the passage of an ordinance by the board of trustees of the town on August 27, 1897. This ordinance provided for the issue of $9,000 of funding bonds for the purpose of raising money with which to discharge the outstanding indebtedness of the town incurred in the payment of the cost of constructing, acquiring, extending, and equipping the waterworks. The bonds were executed and delivered to Farson, Leach & Co. at their office in Chicago, where the same were executed by the board of trustees of the town of Fowler, who were there present for that purpose; and said bonds were then and there sold to Farson, Leach & Co. for their par value, and the purchase price was received by said town. So far as the rights of the bondholders of the water company are concerned, this transaction is wholly immaterial. Nothing could be done by the board of trustees after the bonds had been issued and had gone into the hands of innocent holders for value which could affect or impair their validity. The purchasers of the bonds were not bound to look beyond the ordinance and the records of the town leading up to its adoption. The town is estopped to set up any secret contract or understanding between it and the water company dehors the ordinance and the records of the town relating to its adoption. The purchasers of the bonds had the right to act on the faith that the ordinance spoke the truth, and that no undisclosed fraudulent plan or scheme lurked in ambush to entrap the unwary investor. No evidence was admissible to show that there existed between the board of trustees and the water company some secret and corrupt plan or scheme outside of the ordinance. To permit such evidence against innocent purchasers of negotiable bonds would be to offer a premium on fraud, and open wide the door to successful swindling.

Nor does the exercise of the option by the town to buy the waterworks, when the constitution forbade it, invalidate the contract or the grant contained in the ordinance. In Hynds v. Hays, 25 Ind. 31, 36, 37, it is said:

"It is, we believe, well settled that when a party has contracted to perform anything, and an illegal act is included therein, that he shall nevertheless be held to perform so much of his contract as it is lawful to perform, if it can be separated from that part which is illegal. In other words, so far as the contract is lawful it will be supported, but beyond that the parties will be left without aid. But if the contract be of such a nature that no separation can be made between the legal and illegal

stipulations, then the whole will be held void, and no action can be maintained upon it."

In the present case the contract to pay the hydrant rentals is perfectly valid and legal, and is in no wise dependent upon or connected with the exercise of the option to buy the waterworks. It is entirely practicable to separate the contract to pay rentals, which was lawful, from the option to buy, which was vicious. It is difficult to see how a contract valid and enforceable before the exercise of the option to buy can be rendered invalid by the unlawful act of the town in attempting to purchase. The bondholders had the right to assume that the town would exercise the option to buy in good faith, and would not attempt to do so when it knew the constitution prohibited it from making a lawful purchase. It may be that, as between the town and the water company, the conveyance would not be set aside by a court of equity, at the suit of the water company, on the ground that each party was in pari delicto. The complainant and the bondholders, however, are in no wise implicated in the unlawful act, and they have a right to have the conveyance of the waterworks adjudged illegal. The town of Fowler can claim no advantage or benefit, as against the complainant and the bondholders, by reason of its receiving a conveyance of the waterworks pursuant to the option reserved in the ordinance.

3. May the court in this suit ascertain and determine the amount of the hydrant rentals due and owing by the town of Fowler to the complainant, and decree the payment of the same? It is contended that the right to the rentals grows out of contract, and that their recovery must be sought in an action at law. As a general proposition, this contention is well founded, but is it applicable here? The title of the waterworks stands of record in the town of Fowler. The town is in the actual possession of the tangible property covered by the deed of trust. It is therefore not only a necessary, but an indispensable, party to a suit for the foreclosure of the trust deed. A decree of foreclosure against the water company alone would not enable the purchaser at the foreclosure sale to obtain possession of the waterworks without further litigation against the town. The complainant was therefore under a necessity to make the town of Fowler a party defendant to the bill to procure an effective decree of foreclosure; and in such case it is according to the established course of procedure, in order to avoid multiplicity of suits and to prevent expense and delay to the parties, to proceed and give such final relief as the circumstances of the case may demand. It is not to be overlooked that the town covenanted to pay the hydrant rentals directly to the complainant. In Tayloe v. Insurance Co., 9 How. 390, 13 L. Ed. 187, an agreement to insure had been entered into between the parties, but the policy had not been issued by the company. Upon the happening of a loss the assured filed a bill praying that the company be decreed to pay the loss, or for such other relief as the complainant might be entitled to. The court maintained jurisdiction, saying:

"No doubt, a count could have been framed upon the agreement to insure so as to have maintained an action at law. But the proceedings would

have been more complicated and embarrassing than upon the policy. The party, therefore, had a right to resort to a court of equity to compel the delivery of the policy either before or after the happening of the loss; and, being properly in that court after the loss had happened, it is according to the established course of proceeding, in order to avoid delay and expense to the parties, to proceed and give such final relief as the circumstances of the case demand."

In the case of Ober v. Gallagher, 93 U. S. 199, 206, 23 L. Ed. 829, 831, it is said:

"Having obtained rightful jurisdiction of the parties and the subject-matter of the action for one purpose, the court will make its jurisdiction effectual for complete relief."

See, also, Sunflower Oil Co. v. Wilson, 142 U. S. 313, 12 Sup. Ct. 235, 35 L. Ed. 1025.

This court having acquired rightful jurisdiction of the town of Fowler and of the subject-matter, it will make that jurisdiction effectual by granting complete relief, and will not remit the complainant to an action at law.

The exceptions of the complainant to the findings and conclusions of the special master are sustained. A decree may be prepared in conformity with this opinion.