## CITY OF CENTERVILLE v. FIDELITY TRUST & GUARANTY CO.

(Circuit Court of Appeals, Eighth Circuit. September 29, 1902.)

No. 1,743.

1. MUNICIPAL CORPORATIONS—CONTRACTS WITH WATER COMPANIES—VALIDITY.

Under the Iowa statute (McClain's Code, § 639), which authorizes cities to contract with water companies for the construction of waterworks, to grant franchises therefor, and to agree to pay rentals for fire-hydrants, when a majority of the voters approve the same at an election, the power to make such contracts and the necessary rights and franchises is vested in the council, to be exercised after the general scheme shall have been approved by the voters; and an ordinance passed after an election, embodying the contract, is not invalidated by the fact that it differs in details from the one submitting the matter to a vote, where there is no wide departure, and the changes made do not appear to be detrimental to the interests of the city or indicate bad faith on the part of the council.

2. SAME—CONTRACT TO PAY HYDRANT RENTALS.

A city in Iowa, authorized by statute to contract for a supply of water from a water company and to levy a tax to pay for the same, made a contract by which it agreed to levy such tax, within the statutory limit, as was required each year to pay the rental for a certain number of fire hydrants to be maintained by the company for a term of years, and to pay such rentals directly to the trustee named in the mortgage which the company was authorized to execute to secure an issue of bonds, to be applied exclusively upon the interest and principal of such bonds. *Held*, that such contract was valid, and on the subsequent completion of the works and execution of the mortgage the rights of the parties thereunder became fixed, and the right of the mortgage trustee to enforce payment of the rentals for the benefit of the bondholders was not affected by an option reserved to the city by the contract to purchase

CITY OF CENTERVILLE V. FIDELITY TRUST & GUARANTY CO. 333

the works, whether such option could lawfully be exercised or not, nor by the subsequent exercise of such option, by which the city came into possession of and operated the works.

8. SAME—CREATION OF INDEBTEDNESS—CONTRACT FOR CURRENT EXPENDITURES.
A contract by a city to pay rentals for fire hydrants at stated times in the future is one for a current expenditure, and does not create an indebtedness of the kind contemplated by the provision of the Iowa constitution limiting municipal indebtedness.

4. EQUITY JURISDICTION—ENFORCING LEGAL DEMANDS—DETERMINING ENTIRE CONTROVERSY.
A city, which has purchased and taken possession of waterworks, subject to a mortgage placed thereon by the former owner, is a necessary party to a suit to foreclose such mortgage; and a court of equity, having acquired jurisdiction of the parties and of the subject-matter in such suit, will determine all matters connected with the controversy, and may enforce the rights of the complainant under a contract, made before the execution of the mortgage, by which the city agreed to pay hydrant rentals directly to the trustee for the benefit of the bondholders.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

The appellant, the city of Centerville, is a municipal corporation of the second class, organized and existing under the general laws of the state of Iowa. The appellee, the Fidelity Trust & Guaranty Company, is a New York corporation, and the Centerville Water Company is an Iowa corporation. On February 18, 1895, the city council of the city of Centerville passed Ordinance 207, which by its terms purported to authorize the Centerville Water Company to erect, operate, and maintain for the period of 25 years a system of waterworks in that city, to supply water to extinguish fires and for the use of the inhabitants, with the usual franchise as to the use of streets, alleys, roads, bridges, and public grounds. The water was to be pumped from an artesian well or wells, and many details respecting the construction and capacity of the waterworks were specified, and among them that there should be placed along the mains not less than 70 fire hydrants, located under direction of the council, and a steel water tower 60 feet high on a stone or brick foundation not less than 40 feet high, and a storage reservoir of a capacity of not less than 2,000,000 gallons; the work to be completed and ready to be tested by March 10, 1896. To enable the water company to obtain money to complete the works, the ordinance provided that the water company "may mortgage said entire waterworks plant, including the engine, pumphouse, and real estate connected therewith, all machinery, mains, and piping, and all other property forming said plant, including the rights, franchises, and rentals conferred by this ordinance, to secure a loan to said corporation not exceeding at any time the sum of forty-five thousand ($45,000) dollars; but the company shall not alienate said plant otherwise (except to the city of Centerville) within one year from the date of completion of said works." The ordinance further provided that the city should rent from the water company for the term of 25 years not less than 70 fire hydrants at an annual rental of $3,900, "to be paid by the city treasurer on or before the first day of June and December of each year, direct to the bondholders or their agents, if said bonds are issued, so that said rental fund shall at no time be under the control of said water company. Out of said fund the interest shall be first paid, and the balance remaining shall be applied to taking up and paying off some of the bonds, to the amount of such balance, or, if none then be due, said balance shall constitute a sinking fund for the extinguishment of said bonds. For all hydrants furnished in excess of seventy (70), said city shall pay a rental of fifty dollars ($50) each, in manner and at a time hereinbefore specified."

\* \* \* \* \* \* \* \* \* \*

"Sec. 10. The city of Centerville shall annually during the term hereinbefore mentioned levy and collect a tax of five (5) mills on the assessed valuation, or so much thereof as shall be sufficient to pay the said hydrant

rental accruing during said year. The said tax, when collected, shall be kept and known as a 'Hydrant Fund,' and shall be held inviolate for, and is hereby irrevocably pledged and appropriated for, the payment of such hydrant rental in the manner herein provided. Provision to meet the requirements of this section shall be made in the annual appropriation bill.

"Sec. 11. The city of Centerville reserves the right to purchase the system of waterworks hereby authorized at any time within six months after their completion at the sum of fifty-five thousand ($55,000) dollars, and, should the city elect to purchase and tender to the company the said sum, less the amount of principal of any incumbrance thereon, the company shall forthwith convey to the city by good and sufficient deed of conveyance the said waterworks system, and all real and personal property required in connection therewith, subject, however, to any existing mortgage indebtedness and interest thereon. Said city shall covenant in any such conveyance to it to keep such waterworks system in good repair and efficient operating condition. In event of the purchase being made as aforesaid, the company may, at its option, to be then expressed, accept payment in money or in twenty (20) year 5 per cent. bonds of the city at their par value."

The said ordinance further, and among other things, provided for the submission of the question of the erection of such waterworks to the voters of said city for their approval or disapproval, at a general election to be held March 4, 1895; the following propositions to be voted on: "Shall the Centerville Water Company be authorized to construct waterworks? Shall a tax of five (5) mills be annually levied and appropriated to the payment of hydrant rentals?" Due proclamation of said election was made, and said ordinance given wide publicity in said city; and at such election both of said propositions were approved and carried in the affirmative by a majority exceeding four-fifths of the voters.

Soon after said election said city council passed Ordinance 208, which amended and changed Ordinance 207 in many particulars. It provided that the water tower should consist of a steel reservoir 100 feet high and 12 feet in diameter, on a stone or brick foundation, not less than 4 feet in the ground; also, that the storage reservoir should be of not less than 250,000 gallons; also, that the mortgage authorized should not exceed $50,000; also, that the city should pay the hydrant rentals directly to the trustee of the bondholders, if bonds should be issued; also, that the city's option to purchase the waterworks should be exercised within 30 days after their completion, and be for the sum of $60,000. Said water company began the erection of said waterworks, and on August 1, 1895, issued and negotiated its bonds to the number of 100, in denomination of $500 each, payable to bearer at the office of the Fidelity Trust & Guaranty Company, in Buffalo, New York, or at the Seaboard National Bank, in New York City, at the option of the holder, with interest at 6 per cent. as per semiannual coupons attached; and to secure the payment of such bonds said water company on the same day executed to the complainant, the Fidelity Trust & Guaranty Company, as trustee, its mortgage deed, covering said waterworks and all property connected therewith, and all the rights and franchises of said water company, which mortgage was duly recorded. Said water company completed said waterworks, and the same were duly tested and accepted by said city council February 12, 1896. On February 18, 1896, said city council by ordinance exercised its option to purchase said waterworks plant, and authorized and directed the mayor and city clerk to obtain from said water company a deed of conveyance to said city of said waterworks, and all property connected therewith, and rights and privileges appurtenant thereto, subject to said mortgage deed of trust to complainant, with covenant on the part of the city to operate and maintain said waterworks system; but the city should not be made liable to pay said bonds of said water company, and on delivery of such deed said mayor and clerk were authorized and directed to pay said water company $10,000 in water bonds of said city, before authorized. Thereupon, on the same day, such deed from said water company to said city was executed and delivered in exchange for such water bonds, and said city then went into possession of said waterworks and property conveyed to it by said deed, and have since, until displaced by the receiver in

this suit, maintained and operated the same. Said city has ever since levied and collected said five-mill tax, and prior to February, 1901, had received from that tax $17,577.39, and during the same time had paid over to the complainant as such trustee as hydrant rentals the sum of $12,720, of which sum $2,500 was applied by said trustee in paying the principal of 5 of the bonds secured by said trust mortgage, and $10,220 in the payment of interest coupons of said bonds; and said city had of the moneys so collected, in February, 1901, the sum of $4,800, and had expended incidentally the sum of $53.39. None of the interest coupons which fell due February 1, 1900, or at any time since, on the outstanding 95 bonds secured by said trust mortgage, have been paid; nor has any of 7 of such bonds, the principal of which came due on or at dates before August 1, 1900, been paid.

In this suit, brought by said trustee against the Centerville Water Company and the city of Centerville for the foreclosure of said trust mortgage and other equitable relief, the defendant the Centerville Water Company answered, making no defense. The defendant city of Centerville by its answer claimed that the construction of the waterworks by the Centerville Water Company in accordance with the provisions of Ordinance 208 was never approved by the voters of said city at any election, and was unauthorized, and without any right or valid franchise; that the attempted purchase of the waterworks by the city, and its deed of conveyance from the water company, were unauthorized and void; that it incurred no legal obligation to pay hydrant rentals, and that the water company furnished no water for hydrants; and that it was under no obligation to pay over to complainant as hydrant rentals moneys which it had collected from said five-mill tax and still held. Upon final hearing decree was entered in favor of complainants substantially as prayed.

James C. Davis (Frank S. Payne and W. H. Sanders, on the brief), for appellant.

Horace S. Oakley (Theodore A. Craig and Charles B. Wood, on the brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, delivered the opinion of the court.

The contract entered into between the city of Centerville and the Centerville Water Company, authorizing the water company to construct the waterworks, and granting it the rights and franchises expressed in Ordinance 207, as amended by Ordinance 208, was valid; as was also the agreement therein of the city in respect to the payment of hydrant rentals. Municipal corporations were authorized to make such contracts when "a majority of the voters of the city or town at a general or special election, by vote, approve the same." McClain's Code Iowa, § 639. This approving vote of a majority of the voters of a city is necessary to empower the city council to authorize the erection of waterworks; but the power to make the necessary contract and grant the necessary rights and franchises is exercised by the city council after the approval of the voters, and not directly by the voters. The approval of the voters precedes the contract made by the council, though its terms may be formulated, more or less in detail, for the information of the voters before the election. Taylor v. McFadden, 84 Iowa, 262, 50 N. W. 1070; Thompson-Houston Electric Co. v. City of Newton (C. C.) 42 Fed. 723. As it rested with the city council to make the contract for the erection of

waterworks after the vote approving the authorization of such erection, it follows that the city council could rightfully make such changes in respect to details as might seem to it wise or desirable, without departing widely and radically from the general scheme which was contemplated at the election. Changes in details might be unavoidable from hidden conditions in the ground, or appear very advantageous and desirable on further consideration and examination of other like works. The changes made by Ordinance 208 do not, so far as they relate to the construction of the works, appear to have been to the disadvantage of the city, nor indicate that the council acted in bad faith, or were misled or imposed upon by the water company or by any one.

The city council was authorized by statute to contract for supply of water for the municipality, the payment of hydrant rentals, and the application of the special tax to such payment. "If the right to build, maintain and operate such works is granted to private individuals or incorporated companies by such cities or towns, and such cities or towns shall contract with said individuals or companies for a supply of water for any purpose, such city or town shall levy each year and cause to be collected, a special tax as provided for above, sufficient to pay off such water rents so agreed to be paid to said individual or company constructing said works; provided, however, that said tax shall not exceed the sum of five mills on the dollar for any one year," etc. McClain's Code Iowa, § 643. The agreement on the part of the city for a supply of water and to pay hydrant rentals therefor was proper and lawful, and its further agreement that it would perform the duty imposed on it by the statute, and levy and collect the special tax for the payment of such rentals, was unobjectionable. So, also, was its agreement to pay the hydrant rentals direct to the trustee under the mortgage to be placed, and which was placed, on the property. The raising of the money to construct the works, by mortgage security upon the works and all rights and franchises connected therewith, was contemplated. It is the usual method by which money to construct such works is obtained. The agreement to pay the hydrant rentals direct to the trustee under the mortgage would add confidence to the security and cause no trouble to the city, which would be better assured that the interest on the bonds secured by the mortgage would be paid, and defaults, which might cause foreclosure proceedings, avoided. The mortgage, as contemplated in the contract set forth in the ordinances, was executed August 1, 1895, and the bonds negotiated; and when on February 12, 1896, the waterworks were completed, tested, and accepted by the city council as complying with the contract, the rights and obligations of the city, the water company, and the trustee under the mortgage became fixed under the then completed and fully executed contract, and it no longer mattered whether there had ever been any formal acceptance of either of the ordinances by the water company. Illinois Trust & Savings Bank v. City of Arkansas City, 22 C. C. A. 171, 76 Fed. 271, 284, 285, 34 L. R. A. 518.

The option to the city to purchase the waterworks, on specified terms, within 30 days after their completion and acceptance, was a provision separate from and independent of the other provisions and stipulations of the contract. It imposed no obligation on the city, and

did not increase its indebtedness a farthing. The option reserved was to exercise the discretion of the city council as to whether or not it should do an act which was neither illegal nor immoral, but merely, as it is claimed, beyond its legitimate power and authority under the circumstances then existing. If so, the option while not acted on was harmless, and the presumption would be that when the time should arrive for the city council to exercise its discretion in respect to the option, if it then found that it could not lawfully make the purchase, it would refrain from attempting to do so.

We agree with the learned judge who tried this cause that it is unnecessary to determine whether by the purchase of the waterworks the indebtedness of the city was increased beyond the constitutional limit. This suit is not to recover any indebtedness based upon or arising from such purchase. The rights which complainant here seeks to enforce as trustee under said mortgage are rights which were vested in complainant as such trustee before the attempted purchase of the waterworks by the city, and are not affected by that transaction to which the trustee was not a party. The mortgage by its terms conveyed to complainant as trustee all the real and personal property forming or connected with the waterworks plant, with every franchise, right, power, and privilege held by the water company, and all its claims and demands, during the existence of the mortgage, against the city of Centerville for the rental of fire hydrants, and all its rights to any special fund out of which the same should be payable, and appointed said trustee its agent, irrevocably, to receive and receipt for all sums of money accruing from said city as rentals for fire hydrants, to be applied on the mortgage debt so long as any of it should remain. The city, by its contract with the water company as set forth in Ordinance 208, agreed to rent from the water company, its successors and assigns, for the period of 25 years, not less than 70 hydrants, at an annual rental of $3,900, and any hydrants in excess of 70 at $50 each, the rentals to be paid on stated days by the city treasurer directly to the trustee of the bondholders, so that said rental fund shall at no time be under the control of the water company. This agreement on the part of the city was valid, and, being for a current expenditure, did not create an indebtedness of the kind contemplated by the Iowa constitution in its provision limiting indebtedness of municipalities. Creston Waterworks Co. v. City of Creston, 101 Iowa, 687, 70 N. W. 739; Fidelity Trust & Guaranty Co. v. Fowler Water Co. (C. C.) 113 Fed. 560.

The fund now in possession of the city, collected from the five-mill special tax authorized by section 643, McClain's Code Iowa, should have been applied to the payment of this water rent, and cannot lawfully be diverted to any other purpose. The complainant has the right to require that it shall be so applied.

As the city of Centerville has possession of the waterworks under a conveyance from the water company, it is a necessary party to this suit to foreclose the mortgage made by the last-named company; and a court of equity, having thus obtained jurisdiction of the parties and of the subject-matter, has jurisdiction to determine all matters connected with the controversy, and afford complete and effectual relief.

118 F.—22

Tayloe v. Insurance Co., 9 How. 390, 13 L. Ed. 187; Ober v. Gallagher, 93 U. S. 199, 23 L. Ed. 829; Oil Co. v. Wilson, 142 U. S. 313, 12 Sup. Ct. 235, 35 L. Ed. 1025.

There is no merit in the contention that because the water company, after conveying the plant to the city, ceased to supply water to the hydrants, the obligation of the city to pay the hydrant rentals also ceased. The city, by the original contract under which the waterworks were constructed, had, as has been already stated, contracted that it would pay the hydrant rentals at specified dates, for a specified period, directly to the trustee of the mortgage, which that contract contemplated should be executed by the water company to obtain the money to build the waterworks. The mortgage vested in the trustee the right and power, irrevocably, to receive such rentals directly from the city. No contract afterwards entered into between the water company and the city could abrogate or lessen the vested rights of the trustee; and the conveyance of the plant by the water company to the city was evidently intended to continue the hydrant rentals and the right of the trustee to receive the same. The deed from the water company to the city was expressly made subject to the mortgage, in which that right to receive such hydrant rentals constituted an important and valuable part of the security. The ordinance of February 18, 1896, for the purchase of the waterworks, provided that as a condition of such purchase the city should maintain and operate the waterworks in compliance with the ordinance of February 18, 1895, and that the deed of conveyance to it from the water company should contain a covenant to that effect; and such covenant or condition was accordingly inserted in that deed. This condition was a substantial part of the consideration, by means of which the water company still caused the waterworks to be operated and the hydrants supplied. It was clearly the purpose and intention of both parties to this conveyance that the hydrant rentals should not cease, but should continue to be paid to the trustee; and the city continued to so pay them for some time thereafter.

The case of Fidelity Trust & Guaranty Co. v. Fowler Water Co. (C. C.) 113 Fed. 560, is analogous to the present case; and the well-considered opinion in that case is in accord with the conclusions we have reached in this case.

The decree appealed from is affirmed, with costs.